## COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT 42 U.S.C §§ 1983

Name M° CRIGHT    COLVIN

(Last)          (First)          (Initial)

Prisoner Number B-08892

Institutional Address PELICAN BAY STATE PRISON

FEB - 5 2008

RICHARD W WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

COLVIN MCCRIGHT
(Enter the full name of plaintiff in this action.)

vs.

GOV. ARNOLD SCHWARZENEGGER
ATTY. GEN. EDMUND G. BROWN,
CAL. DIRECTOR OF CORRECTIONS,
PAROLE BOARD - JOHN DOE 1-100
(Enter the full name of the defendant(s) in this action)

CV 08    0804

Case No. _____
(To be provided by the clerk of court)    (PR)

COMPLAINT UNDER THE
CIVIL RIGHTS ACT,
42 U.S.C §§ 1983,
28 U.S.C §§ 2201, 2202,
FEDERAL RULES OF CIVIL
PROCEDURES, RULE 65(a)

*[All questions on this complaint form must be answered in order for your action to proceed..]*

I.    Exhaustion of Administrative Remedies

[**Note:** You must exhaust your administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.]

A.    Place of present confinement PELICAN BAY STATE PRISON

B.    Is there a grievance procedure in this institution?

YES ( )    NO (X)

C.    Did you present the facts in your complaint for review through the grievance procedure?

YES( )    NO (X)

D.    If your answer is YES, list the appeal number and the date and result of the

COMPLAINT                    - 1 -

appeal at each level of review.  If you did not pursue a certain level of appeal,

explain why.

1. Informal appeal _NOT APPLICABLE_____

_____

_____ 2. First

formal level_____

_____

3. Second formal level_____

_____

_____ 4 Third

formal level _____

_____

_____

E.    Is the last level to which you appealed the highest level of appeal available to

you?

YES ( )    NO (X)

F.    If you did not present your claim for review through the grievance procedure,

explain why._THE PAROLE BOARD REPEALED ITS 1040 APPEAL SYSTEM,_

_AND INSTRUCTED PRISONERS TO GO TO COURT WITH COMPLAINTS._

_SEE IN RE DANNENBERG (2005), 34 CAL. 4TH 1061 AT 1071 ._

II.    Parties

A.    Write your name and your present address.  Do the same for additional plaintiffs,

if any.

_COLVIN MCCRIGHT-E-D 8892, P.O. BOX 7500, CRESCENT CITY,_

_CALIFORNIA ._

_____

B.    Write the full name of each defendant, his or her official position, and his or her

COMPLAINT                    - 2 -

1    place of employment.

2    GOV. ARNOLD SCHWARZENNER (STATE CAPITAL IN SACRAMENTO, CAL.)

3    ATTORNEY GENERAL'S OFFICE DATING BACK TO GEORGE DEUKME-

4    JIAN (455 GOLDEN GATE AVE, SUITE 11000, SAN FRANCISCO, CALIF.

5    94102) ; DIRECTOR OF CORRECTIONS, P.O. BOX 942883, SACRAMENTO, CALIF.)

6    (JOHN DOE) PAROLE MEMBERS, 1-100 (RON E. KOENIG)    III.

7    Statement of Claim

8    State here as briefly as possible the facts of your case. Be sure to describe how each

9    defendant is involved and to include dates, when possible. Do not give any legal arguments or

10   cite any cases or statutes. If you have more than one claim, each claim should be set forth in a

11   separate numbered paragraph.

12   (1) THE PROCEDURES AND/OR CRITERION PRESENTLY USED BY

13   THE GOVERNOR'S OFFICE, BOARD OF PRISON TERMS, AND

14   CAL. DIRECTOR OF CORRECTIONS TO DECIDE WHEN OR

15   IF PLAINTIFF PRIMARY TERM (MAXIMUM RELEASE DATE)

16   SHOULD BE FIXED/SET CONTRAVENES THE FEDERAL

17   "EX POST FACTO" AND "DUE PROCESS" LAWS, TO WIT:

18   (2) IN 1972 PLAINTIFF AND HIS CO-DEFENDANT (EX-WIFE)

19   WERE CONVICTED OF FIRST DEGREE MURDER AND SEN-

20   TENCED TO A 7 TO LIFE TERM UNDER CAL. PENAL CODE

21   SECTION 1168 OF THE FORMER INDETERMINATE SEN-

22   TENCING LAW (ISL).

23   (3) FROM 1972-1976 THERE WERE NO STATE LAWS OR

24   (CONTINUED ON ADDITIONAL SHEET/PAGE 1)

25   IV.    Relief

26   Your complaint cannot go forward unless you request specific relief. State briefly exactly

27   what you want the court to do for you. Make no legal arguments; cite no cases or statutes.

28   SEE ADDITIONAL PAGES 3 AND 4 HEREIN.

COMPLAINT                              - 3 -

1    *SEE ADDITIONAL PAGES 3-4.*

2

3

4

5

6

7    I declare under penalty of perjury that the foregoing is true and correct.

8

9    Signed this *1-28-08* day of *JANUARY*_____, 20*08*_____

10

11                *Mr Colren McCright*

12            (Plaintiff's signature)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT            - 4 -

STATEMENT OF CLAIM CONTINUATION — PAGE 1

REGULATIONS THAT REQUIRED THE GOVERNOR AND BPT TO
FIX PLAINTIFF PRIMARY TERM BY A DATE CERTAIN OR AT ALL.

(4) IN THE 1975 IN RE RODRIGUEZ (122 CAL. RPTR. 552)
DECISION THE BPT WAS ORDERED TO CREATE A POLICY TO FIX
THE PRIMARY TERMS OF "ALL" ISL PRISONERS UNDER CDC
JURISDICTION.

(5) IN RESPONSE TO THE DECISION THE BPT. CDC AND
ATTORNEY GENERAL'S OFFICE DEVISED OR CREATED PROCEDURES
FOR FIXING THE PRIMARY TERMS OF "ALL" ISL PRISONERS,
INCLUDING PLAINTIFF AND HIS CO-DEFENDANT (EMPHASIS ADDED).
NOT LONG AFTER THE DECISION THE BPT. CDC AND ATTY. GEN.
REPRESENTED TO THE STATE COURT IN THE CASE OF
IN RE WILLIAMS (1975), 125 CAL. RPTR. 457, THAT THE
PRIMARY TERMS OF ALL ISL PRISONERS WOULD BE FIXED IN
ACCORDANCE WITH THE PROCEDURES CODIFIED IN CHAIRMAN'S
DIRECTIVE (CD) 75/30. SEE EXHIBIT A .

(6) UNDER THE PROCEDURES OF CD 75/30 THE "ONLY" REQUIRE-
MENT THAT ENTITLED PLAINTIFF TO APPEAR AT A TERM
HEARING WAS THE FACT THAT HE WAS ONE OF THE 40,000 ISL
PRISONERS DIRECTLY AFFECTED BY THE RODRIGUEZ TERM FIXING
POLICY OR CD 75/30. SEE ALSO EXHIBIT A.
AFTER SERVING ABOUT 8-YEARS PLAINTIFF'S CO-DEFENDANT
WAS PAROLED IN ACCORDANCE WITH CD 75/30 (EMPHASIS ADDED).

(7) DEFENDANT'S PREDECESSOR'S INFORMED THE WILLIAMS
COURT THAT THE TERM FIXING POLICY IS SET FORTH IN ITS
DIRECTIVE NO. 75/30, EFFECTIVE SEPTEMBER 2, 1975. SEE
EXHIBITS A AND B, PAGE 1, AND PAGE 2, ☆III ; CAL. CODE REG. 2289, 2290.

(8) LESS THAN A YEAR AFTER THE RODRIGUEZ DECISION THE
ATTY. GEN'S OFFICE WAS INSTRUCTED IN THE CASE OF IN RE
STANLEY (1976), 126 CAL. RPTR. 524, THAT THE BOARD'S TERM FIXING
PROCEDURES WERE IN FACT STATED IN CD 75/30. SEE EXH. C .
THE STANLEY COURT ALSO NOTED THAT ATTACHED TO THE
DIRECTIVE IS A TABLE OF FELONIES WITH THE "TYPICAL" AND
"AGGRAVATED" RANGES. THE BASE TERM FOR FIRST DEGREE
MURDER WAS SET A 8-YEARS (TYPICAL) TO 13-YEARS
(AGGRAVATED), MINUS AN ANNUAL 4-MONTH TIME REDUCTION
FROM THE DATE PLAINTIFF LIFE TERM STARTED ON 1-2-73.
(SEE EXHIBIT(S) B , PAGE 7, PARA. G , AND EXHIBIT C .

STATEMENT OF CLAIM CONT. PAGE 2.

(9) SOMETIME IN THE LATTER PART OF 1976, THE BPT, CDC AND ATTORNEY GENERAL'S OFFICE DEVISED A SCHEME TO RENEGE ON OR SUBVERT THE TERM FIXING PROCEDURES ESTABLISHED BY CD 75/30.

THE SCHEME FIRST REQUIRED THE ATTORNEY GENERAL'S OFFICE AND BPT TO HOODWINK THE STATE AND FEDERAL COURTS BY FALSELY CLAIMING THAT CD 75/30 WAS NOT APPLICABLE TO ISL PRISONERS (PLAINTIFF); AND THEREFORE THE BOARD SUDDENLY HAD THE DISCRETION TO FIX OR NOT FIX PLAINTIFFS' PRIMARY TERM IN ACCORDANCE TO THE REQUIREMENT(S) OF PC 3041.

(10) PLAINTIFF CALLS "JUDICIAL NOTICE" TO THE UNDISPUTED FACT THAT THE GOVERNOR, BPT AND CDC HAVE ADOPTED THE POSITION THAT (1) UNDER PC 3041 ISL PRISONERS "DO NOT" HAVE A RIGHT TO A FIXED PRIMARY TERM, AND (2) THE GOV. AND BPT CAN INDEFINATELY POSTPONE FIXING PLAINTIFF PRIMARY TERM UNTIL HE IS FOUND SUITABLE FOR PAROLE. REFER TO IN RE ROSENKRANTZ (2002) 29 CAL. 4TH 616; AND IN RE DANNENBERG (2005), 34 CAL. RPTR. 4TH 1061.

(11) BY CONTRAST, CD 75/30 DICTATED THAT A PRIMARY TERM WOULD BE FIXED BY SEPTEMBER 1, 1976 FOR ALL PRISONERS WITH AN INDETERMINATE SENTENCE; AND WITHOUT ANY REGARD TO THE GOVERNOR'S OR BOARD'S PURPORTED NOTIONS OF WHO IS OR WHO IS NOT SUITABLE FOR PAROLE. SEE ALSO EXHIBITS A, B AND C.

(12) SUBSEQUENT TO THE ESTABLISHMENT OF CD 75/30 AND PRIOR TO THE IMPLEMENTATION OF THE CLEARLY MORE ONEROUS PAROLE PROCEDURES GOVERNED BY PC 3041, THE BPT AND GOVERNOR KNEW OR SHOULD HAVE KNOWN THAT OPERATIONS MANUAL, 74040.6 STATED THAT THE BOARD WOULD BE VIOLATING THE "EX POST FACTO" LAWS IF IT FAILED TO ESTABLISH A LIFE PRISONER'S PAROLE DATE UNDER THE GUIDELINES IN EFFECT PRIOR TO JULY 1, 1977. SEE EXHIBIT D.

ACCORDING TO THE STANLEY COURT, THE PROCEDURES FOR FIXING PLAINTIFF'S PRIMARY TERM WAS ESTABLISHED BY CD 75/30 ON SEPTEMBER 2, 1975. SEE EXHIBIT C.

(13) PLAINTIFF HAS BEEN PREJUDICED AND SERIOUSLY DAMAGED BY THE MORE ONEROUS SUITABILITY REQUIREMENT OF PC 3041, TO WIT:

STATEMENT OF CLAIM CONT. PAGE 3.

(1) THE LATTER PROCEDURES WERE USED TO CANCEL PLAINTIFFS' PRIMARY TERM AT HIS PAROLE HEARING ON 3-18-76, WHERE THE RECORDS OFFICER (PURSUANT TO CD 7530, PAGE 6) DOCUMENTED IN PLAINTIFFS "SUMMARY OF COMMITMENT DATA" RECORDS THAT PLAINTIFFS PRIMARY TERM SHOULD BE FIXED AT A RODRIGUEZ HEARING IN 2-79. THE RECORDS ALSO SHOW THAT WHEN PLAINTIFF APPEARED AT HIS 11-2-79 PAROLE HEARING THE BOARD DID NOT FIX HIS PRIMARY TERM AND INSTEAD DENIED PAROLE. SEE EXHIBIT ___E___.

(14) THE CONSPIRACY TO CANCEL THE PRIMARY TERMS OF LIFE PRISONER'S WAS DISCOVERED IN 1999 BY FORMER BPT CHAIRMAN, ALBERT M. LEDDY, WHEN HE STATED IN HIS MARCH 5, 1999 DECLARATION THAT (1) THE GOVERNOR AND TOP BOARD MEMBERS WERE INVOLVED IN A GENERAL CONSPIRACY TO CANCEL ALL PREVIOUSLY SET PAROLE DATES, AND (2) THE BOARD/GOVERNOR WAS USING THE SUITABILITY PROCEDURES TO ENFORCE IT'S NO-PAROLE POLICY. SEE EXHIBIT ___F___.

(15) BASED THE BPT AND GOVERNOR'S RELIANCE ON PC-3041 AS A BASIS TO JUSTIFY NOT FIXING PLAINTIFFS PRIMARY TERM SINCE 3-18-76 OR FOR 30-YEARS, PLAINTIFF CONTENDS THE FOLLOWING DAMAGES ARE IN ORDER:

1. A DECLARATORY JUDGEMENT THAT DEFENDANT'S ACTS, POLICIES AND PRACTICES DESCRIBED HEREIN VIOLATE FEDERAL EX POST FACTO LAWS; AND PLAINTIFFS DUE PROCESS RIGHT TO HAVE A PRIMARY TERM DETERMINED UNDER THE PROCEDURES CODIFIED IN CD 7530;

2. A PRELIMINARY AND PERMANENT INJUNCTION WHICH:
(a) REQUIRE THE GOVERNOR OR HIS SUCCESSOR TO RESCIND THE PAROLE SUITABILITY POLICY PRESENTLY USED TO POSTPONE OR CANCEL THE TERM HEARING PROCEDURES IN EFFECT IN 1976-1980;
(b) PROHIBIT THE GOVERNOR, HIS AGENTS, EMPLOYEES, APPOINTEES TO THE BPT, SUCCESSORS IN INTEREST AND ALL OTHER PERSONS IN ACTIVE CONCERT OR PARTICIPATION WITH HIM, FROM USING PC-3041 AND IT'S RELATED REGULATIONS TO DETERMINE WHEN PLAINTIFF PRIMARY TERM SHOULD BE FIXED;
(c) DECLARE THAT PLAINTIFFS PRIMARY TERM SHOULD HAVE BEEN

STATEMENT OF CLAIM CONT. PAGE 4:

DETERMINED BY THE PROCEDURES FIRST ANNOUNCED IN CD 75/30 ON SEPTEMBER 1, 1975;

3. COMPENSATORY DAMAGES IN THE AMOUNT OF $5,000,000 (FIVE MILLION DOLLARS) TO PLAINTIFF FROM DEFENDANTS.

4. ANY MONETARY DAMAGES UNDER STATE LAW, SPECIFICALLY CAL. PENAL CODE § 4900 ET SEQ., IN THE AMOUNT OF $100.00 (ONE HUNDRED) DOLLARS) A DAY FROM SEPTEMBER 1, 1975 TO THE DATE PLAINTIFF'S PRIMARY TERM IS FIXED IN ACCORDANCE WITH THE PROCEDURES IN EFFECT ON 3-18-76. 1/

5. PUNITIVE DAMAGES OF $10,000,000 TO PLAINTIFF FROM DEFENDANT'S AND JOHN DOES 1-100.

6. TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.

7. PLAINTIFF COST OF THIS SUIT.

8. SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM JUST, PROPER AND EQUITABLE.

9. EXERCISE PENDENT JURISDICTION OVER ANY PRESENT OR FUTURE STATE LAW CLAIMS.


DATED: JANUARY 28, 2008

RESPECTFULLY SUBMITTED

*Colvin McCright*

COLVIN MCCRIGHT
PLAINTIFF

---

1/ WHEN PLAINTIFF APPEARED AT THE BOARD ON 3-18-76, RULE 2050 OF THE CAL. ADMINISTRATIVE CODE, TITLE 15, DIVISION 2, PAROLE BOARD RULES, JUNE 1, 1976, REQUIRED THE BOARD TO FIX A PRIMARY TERM FOR EACH CRIME WITH AN INDETERMINATE SENTENCE. RULE 2100 PROHIBITED THE BOARD FROM FIXING A PRIMARY TERM FOR PRISONERS SERVING A "DETERMINATE SENTENCE". PLAINTIFF IS SENTENCED TO A INDETERMINATE TERM.
THESE RULES WERE PURGED FROM THE JUNE 1, 1976 TITLE 15. AFTER THESE PROCEDURES WERE DELETED THE ATTORNEY GENERAL'S OFFICE HOODWINKED THE STATE AND FEDERAL COURT'S [ ] BY CLAIMING THERE WERE NO RULES IN THE TITLE 15 THAT REQUIRED THE GOV. AND BPT TO FIX THE PRIMARY TERMS OF ISL PRISONERS; AND THEREFORE PC 3041 COULD BE APPLIED TO INDEFINITELY POSTPONE FIXING LIFER PRIMARY TERMS.

# EXHIBIT A

0162

CALJIC No. 14.10 [definition of theft by false pretense].) Slocum's proffered instruction was virtually identical to CALJIC No. 4.35 which was given.

Defendant asserts that the trial court erred in refusing the following instruction: "Unless you find that Dr. Slocum knowingly and designedly submitted Medi-Cal claim forms on which he was paid a sum in excess of $200.00, for claimed services which he did not render, with the specific intent to defraud Medi-Cal and that said claim forms were submitted pursuant to one scheme or plan to defraud, you cannot find Dr. Slocum guilty of Grand Theft."

The jury was correctly instructed as to the requisite intent. Furthermore, the trial court also gave CALJIC No. 14.31 (grand theft and petty theft—theft in installments). That instruction lucidly covers the issue. A court may refuse to give a defendant's proposed instructions on an issue where that issue is covered by other instructions. (*People v. Arguello,* 61 Cal. 2d 210, 213, 37 Cal.Rptr. 601, 390 P.2d 377; *People v. Quinlan,* 8 Cal.App.3d 1063, 1068, 88 Cal.Rptr. 125; *People v. Galvan,* 208 Cal.App.2d 443, 449, 25 Cal.Rptr. 128.)

[33] Defendant next complains that the trial court erred in refusing the following: "Evidence has been introduced: (1) That the description used by the district attorney in describing the procedures used in taking an I.V.P. x-ray referred to a procedure that is seldom used. (2) That Nasal Pack Trays such as that which was admitted into evidence as People's Exhibit 28 are not used in doctor's offices. (3) That the procedure used in taking a specimen for a throat culture was not properly described by the district attorney. [¶] You may consider this evidence in determining what weight to give to the testimony of witnesses that they did not have the treatments referred to."

Argumentative instructions are improper. "It appears to be a common practice to select certain material facts, or those which are deemed to be material, and endeavor to

force the court to indicate an opinion favorable to the defendant as to the effect of such facts by incorporating them into instructions containing a correct principle of law." (*People v. McNamara,* 94 Cal. 509, 513, 29 P. 953, 954; see also *People v. Hill,* 76 Cal.App.2d 330, 342, 173 P.2d 26.) The proposed instruction fits the foregoing description.

The judgment of conviction is affirmed.

GARDNER, P. J., and TAMURA, J., concur.



53 Cal.App.3d 10

In re Bobby WILLIAMS, on habeas corpus.

Cr. 8255.

Court of Appeal, Third District.

Nov. 14, 1975.

As Modified Dec. 12, 1975.

Hearing Denied Jan. 8, 1976.

Inmate of state prison brought habeas corpus proceeding to secure his release from prison after conviction of sodomy, and imprisonment for term of not less than one year. The Court of Appeal, Puglia, P. J., held that there was no legally competent basis upon which to conclude that priority application of Adult Authority term fixing procedures and policies to inmate's case would result in administrative determination that inmate was being unconstitutionally imprisoned for term out of proportion to his individual culpability, and that method and schedule of Adult Authority in setting primary terms for approximately 40,000 persons sentenced to indeterminate terms was not unreasonable, and inmate's claim that reasonable time had elapsed to allow Adult Authority to fix his primary term was premature.

Petition denied.

ǀ12ǀ PUGLIA, Presiding Justice.

In response to the within petition for habeas corpus, we ordered the California Adult Authority ("Authority") forthwith to fix petitioner's term or show cause before this court why it had not done so.

It appears from the return and traverse thereto that petitioner, an inmate of the state prison, is imprisoned upon a 1967 conviction of sodomy (Pen.Code, § 286).[1] He alleges that his term has never been ǀ13ǀ fixed by the Adult Authority. This allegation is unchallenged by the Authority.[2] Accordingly, petitioner's indeterminate

1. All section references hereinafter are to the Penal Code.

2. Nevertheless, petitioner was released on parole in April 1973 but was arrested 22 days later and returned to prison for violation of parole. Thereafter this court rejected petitioner's due process challenge to the parole revocation proceedings. (In re Williams (1974) 36 Cal.App.3d 649, 111 Cal.Rptr. 870.)

3. The declaration of the Chairman of the Adult Authority, incorporated as an exhibit to the return, details the steps taken by the Adult Authority to implement the Rodriguez decision, suggests the magnitude of the problem, and identifies the order of priority in which hearings will be held to fix the "primary" terms mandated by Rodriguez. The declaration in its entirety states:

"I am the Chairman of the California Adult Authority. In this position, I am responsible for implementing the California Supreme Court's decision in In re Rodriguez as quickly as possible.

"To this end, the following steps have been undertaken:

"1. A group of attorneys and law students were hired to research the various statutory penalties imposed by the fifty states for some two hundred of the most common felonies in California.

"2. Department of Corrections research staff were taken from their regular duties to research the actual sentences imposed in other jurisdictions, and to research the actual sentences traditionally fixed by the Adult Authority over the past several decades.

"3. The statutory sentences for California crimes and their counterparts in other jurisdictions were compared with the actual sen-

term of "not less than one year" (§ 286) is, in contemplation of law, a life sentence (§ 671; In re Mills (1961) 55 Cal.2d 646, 653, 12 Cal.Rptr. 483, 361 P.2d 15; In re Lee (1918) 177 Cal. 690, 693, 171 P. 958).

In its return, the Adult Authority avers that it is "diligently seeking to set the terms of all prisoners in the custody of the California Department of Corrections in accordance with the recent Supreme Court decision in In re Rodriguez, 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384] (1975), and that [it] has formulated a comprehensive plan for the organized and speedy fixing of all terms."[3] The Authority further

tences fixed for California crimes and their counterparts in other jurisdictions. From this comparison, "ranges" were derived describing the usual sentence for a "typical" crime of that type and the usual sentence for an "aggravated" crime of that type.

"4. A variety of actual situations were analyzed in an attempt to develop criteria to distinguish between a typical crime of a given type and an aggravated crime of that type.

"5. Adult Authority staff developed procedures which were circulated among the hearing officers, the Department of Corrections, the Attorney General's office and various other interested parties.

"6. A schedule is being developed to move expeditiously to hear the approximately 40,000 persons (inmates and parolees) under the Adult Authority's jurisdiction as quickly as possible, in an order allowing priority to those persons in the greatest need of the hearing.

"This schedule is expected to proceed approximately as follows:

"Primary terms will be fixed beginning September 2, 1975. A primary term will be fixed for each inmate on each of his offenses the first time he appears before the Adult Authority on or after that date. All regularly scheduled cases will appear as they are now scheduled to appear.

"In addition to the regular calendars, I have been able to hire some additional hearing officers on an emergency basis. These hearing officers will begin on September 2, 1975 to hear and set primary terms for those inmates who appeared before the Adult Authority between March 1, 1975 and June 30, 1975 who received parole dates. It will take approximately six months to complete hearing these cases.

"Sometime next March, we hope to begin advancing the hearing dates for those persons

alleges that it "must be permitted to fix the terms of prisoners at regularly scheduled hearings, rather than at special hearings ordered by the courts, if full implementation of the *Rodriguez* decision is to be realized for all prisoners as soon as possible."

## I.

As his first contention petitioner suggests that the order established by the Adult Authority in which primary terms are to be fixed (see fn. 3, ante, p. 459), be modified in a manner better calculated to accomplish the mandate of *Rodriguez*. Petitioner proposes that first priority be assigned those prisoners who may be eligible for discharge because they have already been incarcerated longer than the time ranges suggested for their particular offenses in written policy of the Adult Authority adopted in response to *Rodriguez*.

The Adult Authority policy is set forth in its directive No. 75/30, effective September 2, 1975. The procedures for term fixing are established therein. The range in years within which the primary term for each of the more common felony offenses should ordinarily be set is suggested. There are two ranges for each offense considered: The shorter period, denominated the "typical range," and the longer period, denominated the "aggravated range." The directive specifies the criteria to be considered in selecting a range and fixing the precise term in a particular case.

The suggested ranges need not be adhered to rigidly. Terms may be fixed either short of or in excess of the suggested ranges for particular offenses so long as they are within the statutory minima and maxima.

Section 286 was amended in the current regular session of the Legislature (Stats. 1975, ch. 71, No. 2, West's Cal.Legis.Service, p. 146; Stats.1975, ch. 877, No. 7, West's Cal.Legis.Service, p. 2246). The 1975 amendments, effective January 1, 1976, work substantial changes in existing law. For example, anal intercourse between consenting adults is no longer proscribed except when committed by an inmate of a correctional facility (in which case it is punishable by maximum terms of either five years in prison or one year in jail (§ 286, subd (e)); and bestiality, no longer included with the definition of sodomy, constitutes instead a misdemeanor (§ 286.5; Stats.1975, ch. 71, No. 2, West's Cal.Legis.Service, p. 146, effective Jan. 1, 1976). Different penalties are imposed by newly amended section 286, depending upon the presence of certain factors deemed by the Legislature to differentiate among degrees of culpability. Thus, sodomy committed by force or violence exercised in concert with another draws the most stringent penalty, imprisonment for 5 years to life (§ 286, subd. (d)); sodomy committed either by force or violence, or upon a person under the age of 14 between whom and the perpetrator there is an age disparity in excess of 10 years is punishable by imprisonment for not less than 3 years (§ 286, subd. (c)); sodomy commit-

---

who are scheduled to be heard after March, 1976. We hope to have set primary terms for all inmates, except those newly received by the Department, by September 1, 1976.

"Given the present resources of the Adult Authority, including the hiring of additional hearing officers on an emergency basis, it is impossible to advance individual inmates on hearing calendars except in a routine, orderly way which allows for the scheduling of hearing officers to the proper institution, the preparation of records for the hearing and the notification of the inmate. Because of the

huge number of hearings which have to be conducted and the fact that each hearing will now take considerably longer than previously, the Adult Authority is unable to fix primary terms for each inmate any faster than the present schedule allows.

"I certify under penalty of perjury that the foregoing is true and correct.

"/s/ R. K. PROCUNIER
"R. K. PROCUNIER
"Chairman, Adult Authority
"Date: 8/25/75    "

# EXHIBIT B

0166

State of California
CALIFORNIA ADULT AUTHORITY
Sacramento  95814

September 2, 1975

CHAIRMAN'S DIRECTIVE NO. 75/30

SUBJECT:  Implementation of In re Rodriguez

PURPOSE:

This Directive establishes procedures designed to bring Adult Authority term setting practices into compliance with recent changes in the law. Guidelines describing "normal" ranges for sentences are provided to assist in assuring equal treatment in sentencing practices, to allow articulation of the important elements of a particular sentence and to assure that reasons are given for sentences of unusual severity or lenience.

This Directive establishes distinct procedures for term fixing. Parole granting procedures are unaffected by this Directive, and continue to be covered by Chairman's Directive 75/20. The two procedures are different in significant respects and should not be confused.

SUBJECT MATTER:

I.  General

A primary term will be fixed for each offense in conformance with these procedures and guidelines. Once fixed, the primary term for that offense cannot be refixed upward. A discharge date earlier than the primary term may be legally be fixed, but that discharge date may be refixed upward to the primary term if the inmate or parolee engages in conduct which affords cause to believe he cannot or will not conform to the conditions of parole, or would pose a danger to society if free.

In the vast majority of cases, the inmate will serve a portion of his primary term inside prison and a portion of it on parole. He will ordinarily be discharged earlier than his primary term, since his case is reviewed frequently after release on parole under Adult Authority Resolution 275.

As a matter of practice, no discharge date earlier than the primary term will ordinarily be fixed except under Resolution 275, unless the inmate already has a discharge date established or should be immediately discharged.

-1-

II. __Inmate Rights at Term Fixing Hearing__

Each inmate will have the same rights at his term fixing hearing as he has at his parole consideration hearing.

III. __Scheduling Term Fixing Hearings__

Terms will be fixed in conjunction with regularly scheduled parole consideration or parole violation hearings. Special panels of hearing officers will be hired to hear additional cases, but no inmate will have his regularly scheduled Board appearance advanced without special arrangements between the Department and the Adult Authority.

IV. __Information Considered at Term Fixing__

A. __General__

1. Information which may be considered.

   Information which indicates the inmate's personal culpability in the offense for which he was sentenced to prison, his past history and his individual personality may be considered.

2. Information which may not be considered.

   Information concerning conduct subsequent to the offense will not be considered. For example, information concerning subsequent parole violations, disciplinaries, institutional conduct and present psychiatric condition will not be considered.

3. __Documents Considered__

   The following sources of information from the inmate's central file will be considered as appropriate in each case:

   1. The Cumulative Case Summary, excluding any information on institutional behavior, disciplinaries and other conduct subsequent to the offense.

   2. The Probation Officer's Report. This document will be relied on to resolve any disputes over the facts of the crime which cannot be settled otherwise.

   3. Rap Sheet, excluding offenses subsequent to the commitment offense.

   4. Arrest and Crime Reports.



5.  Legal Documents, such as the abstract of judgment, the judgment, and transcript at the time of sentencing.

6.  Comments concerning the inmate's personal culpability submitted under Penal Code section 1203.1, 3022 and 3042.

Any other documents which are considered will be specifically listed on CDC Form 279C. Documents considered in term fixing need not be physically separated from the remainder of the file.

C.  **Inmate's Version**

The facts of the crime should be discussed with the inmate to verify their accuracy and to determine the extent of his personal culpability.

Written materials submitted by him relating to his personal culpability in the crime should be considered.

D.  **Postponements**

Any time insufficient facts are available to determine the extent of the inmate's culpability, the hearing should be postponed to the next calendar. Institutional staff should be specifically instructed to obtain the necessary information. No primary term should be set until sufficient information is obtained on all counts of a commitment.

V.  **Term Fixing**

A.  **Fix the Base Term**

1.  Evaluate the Inmate's Culpability

The facts and circumstances surrounding each offense should be evaluated to determine the extent of the individual's culpability for his crime, based on the listed general and specific criteria.

2.  General Criteria - Seriousness of the Offense.

The most important factor to be considered is the seriousness of the inmate's participation in the crime. General factors to be considered include:

a.  The seriousness or triviality of the offense itself in terms of the potential harm posed by this individual's offense to other individuals or society.

CD 75/30                     -4-                    September 2, 1975

    b.  The presence or absence of violence, including the seriousness of any injuries actually inflicted, the number of victims actually injured, the degree to which the individual actually participated in inflicting injury or assisting to inflict injury, and the realistic potential for serious violence.

    c.  The possession or use of weapons, including the type of weapon, and whether the weapon was merely available, was brandished, or whether it was actually used to inflict injury.

    d.  The extent of damage or loss to property.

    e.  The sophistication or professionalism with which the crime was carried out.

    f.  The quantities of contraband possessed or sold.

3.  General Criteria - Characteristics of the Offender.

Also to be considered are the particular characteristics of the offender, including:

    a.  Age.

    b.  Defective reasoning ability. Whether the crime was committed by an individual possessing less than full mental faculties, including whether the condition is (1) long-standing, such as low intelligence, low education, serious psychiatric problems; (2) temporarily induced, such as rage, emotion, or a brief psychotic episode, or (3) temporarily self-induced, such as conditions resulting from use of drugs or alcohol.

    c.  Degree of premeditation of the crime.

4.  Specific Criteria.

Various specific criteria are listed in the Guidelines.

5.  Select the Typical or Aggravated Range.

Using the general and specific criteria, the typical or aggravated range should be selected. If the aggravated range is chosen, the specific factual reasons for choosing that range must be listed in numeric order on CDC Form 279C. A choice of the aggravated range may be based only on the seriousness of the offense in question; it must be an aggravated crime of that type. A man's criminal history or pattern will not affect the range chosen.

CD 75/30                        -5-

6. Establish the Base Term

·Using the general and specific criteria, the base term
should be selected from the suggested range. Panels
are free to select a term above or below the suggested
range as the individual facts and circumstances indi-
cate. Any time a base term is established outside
the suggested range, the specific factual reasons for
going outside the range must be listed in numeric order
on CDC Form 279C.

B. Adjust the Base Term

Once the base term is established, it should be adjusted,
using the suggested adjustment ranges, for other serious
criminal behavior. The other criminal behavior should be
evaluated for its seriousness under the general and specific
criteria and characterized as less serious or more serious.

1. Other Crimes Part of Same Commitment.

If the inmate has been sentenced to prison on several
offenses as part of the same commitment, any other
prior offense will be used to adjust the base term
from the adjustment ranges.

If the inmate received several commitments to prison,
no adjustment for later commitments will be made.
Earlier commitments may be used for adjustment as a
prior prison commitment (see below).

2. Prior Prison Commitments.

If the inmate was previously sentenced to prison, the
base term should be adjusted, using the suggested ad-
justment ranges, for each previous commitment to prison.
If the inmate was released from prison on the prior
commitment, and was not again received back in prison
for a period of five years from the date of actual
release, that commitment will not be used to adjust
the base term unless the specific reasons for using
it are listed in numerical order on CDC Form 279C.

Prior prison commitments include any conviction in a
state or federal court which was not subsequently
reversed by an appeals court, and which resulted in
the individual actually being committed to any state
or federal prison. Prior prison commitments include
previous commitments to the Department, whether or
not the inmate was ever released on that commitment.

A previous single commitment to prison for several
crimes should be treated as a single prior prison
commitment, although a commitment for multiple offenses
may warrant characterizing that commitment as more
serious.

When prior prison commitments are used to extend the
base term, those specific commitments and dates should
be noted on CDC Form 279C.

3. **Adjustments Outside the Suggested Adjustment Ranges.**

Each panel is free to adjust the base term for a period
above or below the suggested adjustment range. If the
base term is adjusted for a period outside the suggested
adjustment range, the specific reasons for going outside
the range must be listed in numeric order on CDC Form
279C.

4. **Other Crimes Not Resulting in a Prison Commitment.**

Other crimes which were committed by an inmate prior to
commitment to prison will not result in the addition of
an increment to the base term from the adjustment ranges,
but may be considered in establishing the base term.
In general, only the most serious crimes (those resulting
in commitment to prison) are used to add an increment
to the base term, and those less serious crimes (those
resulting in a local sentence) are considered as part
of the individual's pattern of criminality.

C. **Fix the Primary Term.**

The adjustments will be added to the base term to establish
the primary term. A primary term will be fixed for each
offense. No primary term will be fixed above 25 years unless
the specific factual reasons for going above 25 years are
listed in numeric order on CDC Form 279C.

D. **Checking the Minimum and Maximum Terms.**

Each primary term established will be checked to assure
that it is being fixed within the minimum and maximum term
for that offense.

E. **Documentation**

Records Officers will complete the following portions of
CDC Form 279C:

1. Offense, minimum and maximum.

2. Case number and count number.

CD 75/30                    -7-                    September 2, 1975

3. **Discharge date.** No discharge date will be calculated for the first of several consecutive offenses; only the effective discharge date for the series will be noted.

4. **The panel hearing the case.**

5. **The name, number, institution, and calendar and date of hearing.** The panel hearing the case will complete the remainder of the information.

F. **Immediate Discharge Cases.**

Prior to Rodriguez, the Adult Authority could refix terms based on events subsequent to the commitment offense, such as for new crimes, disciplinaries and parole violations. Some inmates are presently serving terms disproportionate to the commitment offense, based on their subsequent history. These inmates will be entitled to discharge under the new procedures.

1. **Non-dangerous Inmates**

If the panel interviewing the inmate determines that he will be entitled to discharge under these procedures within 15 days and that he poses no substantial danger to the public, a discharge date should be set as soon as possible, allowing institutional staff sufficient time to arrange the discharge.

2. **Dangerous Inmates**

If the panel interviewing the inmate feels that the inmate apparently will be entitled to discharge under these procedures within 15 days, but feels that he still poses a substantial danger to the public if released, the reasons for the danger should be noted on CDC Form 279C and the case should immediately be referred to the Review Committee for decision.

G. **Time Credits**

Records officers will deduct all time credits legally available for each offense from the primary term established for that offense.

In some cases, the amount of time credits may be so large (such as with Department of Health, CRC and probation revoked time credits) that when deducted from the primary terms established a completely inadequate term of jurisdiction remains to carry out the intent of the commitment to prison. In those cases, an amount sufficient to allow

CD 75/30    -8-    September 2, 1975

an adequate period of jurisdiction should be added to the primary term which would otherwise be established.

For example, a man committed to the Department of Health as an MDSO prior to commitment to prison for the same offense may ordinarily be entitled to a primary term of 6 years. However, if he spent 7 years at Atascadero prior to commitment to prison, an additional period should be added to the primary term to allow sufficient jurisdiction. In this case, a primary term of eleven years may be necessary.

The amount added simply to have adequate jurisdiction, and the reason for adding the time should be noted on the CDC Form 279C.

## EFFECTIVE:

These procedures become effective September 2, 1975, and apply to any inmate heard or reheard personally for any reason on and after that date.


R. K. PROCUNIER
Adult Authority Chairman

CD 75/30
9-2-75

GUIDELINES
SUGGESTED BASE RANGES

| | PAROLE (MOS) | | TERM (YRS) | |
|---|---|---|---|---|
| | TYP | AGG | TYP | AGG |

### 1. HOMICIDE

| | PAROLE (MOS) | | TERM (YRS) | |
|---|---|---|---|---|
| | TYP | AGG | TYP | AGG |
| Murder 1st (187, 7 yr., Life) . . . . . | (96- | -156) | (-----) | (-----) |
| Murder 2nd (187, 20 mo., 5-Life) . . . | (42- | -66) | 8-10 | 11-14 |
| M/S (Vol) (192.1, 6 mo., 6 mo.-15) . . . | (36- | -46) | 6-8 | 9-11 |
| M/S (Invol) (192.2, 6 mo., 6 mo.-15) . . | (24- | -42) | 3-6 | 7-9 |
| M/S (By Auto) (192.3, 6 mo., 6 mo.-5) . . | (18- | -24) | 2-3 | 4-5 |

Specific Criteria for Aggravated Brackets.

1) multiple victims, 2) vicious in nature where suffering is deliber-
ately inflicted.

### 2. VIOLENCE AGAINST A PERSON

MORE SERIOUS

| | | | | |
|---|---|---|---|---|
| Administer Poison (216, 3 yr.4 mo., 10-Life) . . . . . . . . . . . . | (40- | ) ( | (10-11) | (12-14) |
| Pose as Kidnapper (210, 20 mo., 5-Life) ( | ) ( | ) | ( 8-10) | (11-14) |
| ADW on Police Officer/Fireman by Ex-Felon (245(b), 20 mo., 5-Life) ( | ) ( | ) | ( 8-10) | (11-14) |
| Hostage (4503, 20 mo., 5-Life) . . . . ( | ) ( | ) | ( 8-10) | (11-14) |

| | | | | |
|---|---|---|---|---|
| SERIOUS . . . . . . . . . . . . . . . . | (24-32) | (30-38) | ( 6-8 ) | ( 9-11) |

Kidnapping (207, 1 yr., 1 yr.-25)
Assault w/Intent to Commit Rape, etc.
    (220, 1 yr., 1 yr.-20)
Assault w/Deadly Weapon
    (245(a), 6 mo., 6 mo.-Life)
ADW on Police Officer/Fireman
    (245(b), 6 mo., 6 mo.-Life)
Child Stealing (278, 6 mo., 6 mo.-20)
Assault by Prisoner Serving Less than Life
    (4501, 1 yr., 3-Life)

23

| 2. VIOLENCE (continued) | PAROLE (MOS) | | TERM (YRS) | |
|---|---|---|---|---|
| | TYP | AGG | TYP | AGG |
| LESS SERIOUS . . . . . . . . . . . . | ( _ _ ) | ( _____ ) | ( 5-7 ) | ( 8-9 ) |

Mayhem (203, 6 mo., 6 mo.-14)
Assault w/Intent to Commit Murder
    (217, 6 mo., 6 mo.-14)
Assault to Commit Felony not in Sec. 220
    (221, 6 mo., 6 mo.-15)
Battery on Police Officer/Fireman
    (243, 6 mo., 6 mo.-10)
Assault w/Caustic Chemical
    (244, 6 mo., 6 mo.-14)
Assault w/Deadly Weapon (Note: Charged as
    a lesser included offense of 217 PC)
    (245(a), 6 mo., 6 mo.-14)

| | | | | |
|---|---|---|---|---|
| LEAST SERIOUS . . . . . . . . . . . . | ( ) | ( ) | ( 2-3 ) | ( 4-5 ) |

False Imprisonment (236, 6 mo., 6 mo.-10)
Assault Against Police Officer/Fireman
    (240, 6 mo., 6 mo.-2)
Discharge Firearm at Inhab. Dwelling
    (246, 6 mo., 6 mo.-5)
Battery on Non-Prisoner by Prisoner
    (4501.5, 6 mo., 6 mo.-3)
Failure to Render Aid after Accident
    (20001 VC, 6 mo., 6 mo.-5)
Drunk Driving Causing Bodily Injury
    (23101 VC, 6 mo, 6 mo.-5)

---

Specific Criteria for Aggravated Brackets

Extent of Injury. 1) death, 2) permanent loss of use of body organ or limb, 3) long-standing serious medical problems resulting in pain or suffering, 4) extensive hospitalization (for example, victim lost an eye or use of an arm, continues to suffer abdominal pains with no medical relief in sight, was in intensive care unit for three weeks, still requires medical attention once per month).

Manner of Infliction. 1) viciousness of assault went well beyond incapacitating victim, 2) prolonged torture – pain inflicted simply to see victim suffer, 3) victim was helpless relative to the defendant (for example, defendant returned in 10 minutes and continued to attack although victim was already unconscious; although victim went down with the first shot, defendant fired 4 more shots into the body; victim was bound and gagged while defendant burned him with cigarette, stabbed him with a knife, hit him with a pipe. Both defendants took part in beating of 65-year-old man, paraplegic, woman, child).

Injury of Peace Officer Intended. 1) assault was specifically intended to seriously injure a peace officer in his line of duty (for example, took officer's gun and fired three shots in his direction; hit officer in the head with jack handle to free second suspect; three defendants inflicted severe beating to officer attempting to make an arrest).

|  | PAROLE (MOS) | | TERM (YRS) | |
|---|---|---|---|---|
|  | TYP | AGG | TYP | AGG |

### 3. SEXUAL OFFENSES

**MORE SERIOUS**

| Offense | TYP | AGG | TYP | AGG |
|---|---|---|---|---|
| Rape – great bodily injury (264, 5 yr., 15-Life) | ( ) | ( ) | (15-18) | (19-22) |
| Aiding Rape w/Force (264.1, 20 mo., 5-Life) | ( ) | ( ) | ( 8-10) | (11-14) |
| Sodomy, aid, by force (286(d), 20 mo., 5-Life) | ( ) | ( ) | ( 8-10) | (11-14) |

**SERIOUS** . . . . . . . . . . . . . (30- )( -60) ( 8-10)(11-14)

Rape w/Force or Threat
 (261(2-3), 1 yr., 3-Life)
Sodomy under 14 & over 10 years older or
 by force (286(c), 1 yr., 3-Life)
L&L, Child under 14 (288, 1 yr., 1-Life)
Oral Cop under 14 and over 10 years older
 (288a(c), 1 yr., 3-Life)

**LESS SERIOUS** . . . . . . . . . . . . . (12- )( -30) ( 3-5 )( 6-8 )

Seduce for Prostitution (266, 6 mo., 6 mo.-5)
Place Wife in House of Prostitution
 (266g, 6 mo., 6 mo.-10)
Pimping (266h, 6 mo., 6 mo.-10)
Pandering (266i, 6 mo., 6 mo.-10)
Incest (285, 1 yr., 1-50)
Sodomy under 18 (286(b), 6 mo., 6 mo.-15)
Oral Cop under 18 (288a(b), 6 mo., 6 mo.-5)
Indecent Exposure w/like or 288 prior
 (314(1), 6 mo., 6 mo.-5)
Statutory Rape (261.1, 6 mo., 6 mo.-50)
Unlawful Sex Intercourse
 (261.5, 6 mo., 6 mo.-50)
Annoy Children w/Like or 288 prior
 (647(a), 1 yr., 1-Life)
Incest (285, 1 yr., 1-50)

**Specific Criteria for Aggravated Brackets**

Intent of Physical or Psychological Harm. 1) Injuries requiring hospitalization or extensive medical treatment, 2) injuries inflicted go well beyond accomplishing illicit act, 3) victim was forced to perform in view of the victim's family or friends. Lack of concern for unusual condition of victim: very young, old, pregnant, bedridden (for example, victim was raped and beaten unconscious, victim pleaded not to be hurt and would not resist but was choked and tied up anyway, act was attempted in the presence of three minor children, victim was 11 years old, 65 years old, incest over a three-year period resulted in severe emotional problems for stepdaughter victim).

| | PAROLE (MOS) | | TERM (YRS) | |
|---|---|---|---|---|
| | TYP | AGG | TYP | AGG |

### 4. PROPERTY CRIMES W/THREAT TO PERSON

**MORE SERIOUS**

| | PAROLE (MOS) | | TERM (YRS) | |
|---|---|---|---|---|
| Robbery (Victim Injured) (211, 5 yr., 15-Life) | (60-38) | (36-44) | (15-18) | (19-22) |
| Robbery 1st (211, 20 mo., 5-Life) | (30-38) | (36-44) | (6-8) | (9-11) |

| | | | | |
|---|---|---|---|---|
| **SERIOUS** | (18-30) | (30-42) | (5-6) | (7-8) |

Arson-Burn Public Building, etc.
    (448(a), 8 mo., 2-20)
Arson-Burn Structures as Described by
    Statute) (448(b), 6 mo., 6-10)
Arson-Burn Dwelling, House, etc.
    (477(a), 8 mo., 2-20)
Robbery 2nd  (211, 1 yr., 1-Life)

| | | | | |
|---|---|---|---|---|
| **LESS SERIOUS** | ( ) | ( ) | ( 2-3 ) | ( 4-5 ) |

Arson-Burn Personal Property
    (449(a), 6 mo., 6 mo.-3)
Arson-Burn Insured Property
    (450(a), 6 mo., 6 mo.-5)
Attempt to Commit Arson
    (451(a), 6 mo., 6 mo.-5)

## Specific Criteria for Aggravated Brackets

**Extent of Force or Threat.**  Force or threat greatly exceeded what was necessary; 2) force or threats continue after property is acquired; 3) great force or threat was used on relatively helpless victim (for example, hit lady in the head with pistol butt and took her purse. Victim gave defendant his wallet but was beaten anyway; knife was held at child's throat with continuous threatening gestures until money was received; eight people in the building at the time fire began.)

**Systematic in Nature.**  1) the planning indicates crime is part of a larger criminal organization; 2) crime is part of a larger organized effort to disrupt public business or safety; 3) crime was done for hire with evidence that defendant has offered such services at other times (for example, three defendants rob jewelry store, have floor plans, alarms are cut and $500,000 taken; defendants use stolen cars with changed plates, convicted of robbing supermarket at closing, suspected of four identical crimes in 2-year period; using timing devices to ignite fire in hall of records, member of a group charged with 3 similar fires at other public buildings; building burned for insurance, defendant received $20,000; is well known professional in this field with 3 prior convictions).

the date of the prior conviction and the length of time between release from custody and subsequent convictions if the prisoner has never been placed in custody. The period of confinement shall not be increased for convictions or prior prison terms resulting from convictions that have been reversed in court or pardoned by the executive.

(1) Prior Prison Terms. In adding enhancements for prior prison terms the panel should be guided by the determinate enhancements for prior prison terms.

(2) Prior Felony Convictions With Probation. An enhancement of six months should be added for each prior felony conviction for which the prisoner was granted probation.

(d) Additional Term for Disciplinary Offenses. The panel may impose a specific enhancement for serious disciplinary offenses which occurred since arrival in prison but before a parole date is granted. Only disciplinary offenses which might have resulted in rescission proceedings after a parole date had been granted as specified in § 2451 may be considered for enhancing the total period of confinement. Serious disciplinaries which occur after a parole date has been granted may increase the total period of confinement only after rescission proceedings (see Chapter 4).
NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Section 3041, Penal Code.

HISTORY
1. New subsection (c) filed 8-18-78 as an emergency; designated effective 8-21-78. Filed in the week of Register 78, No. 33, this amendment is printed in Register 78, No. 41 for technical reasons (Register 78, No. 41).
2. Certificate of Compliance filed 10-27-78 (Register 78, No. 43).
3. Amendment of subsection 2 in subsection (b) filed 1-25-79; effective thirtieth day thereafter (Register 79, No. 4).
4. Amendment filed 6-11-79; effective thirtieth day thereafter (Register 79, No. 24).
5. Amendment of subsections (b) and (c) filed 2-8-80; effective thirtieth day thereafter (Register 80, No. 6).

§ 2287. Circumstances in Aggravation of the Additional Term for Other Crimes.
Circumstances which may justify imposition of a term for another crime higher than that suggested in Section 2286 include:
(a) Pattern of Violence. A victim was seriously injured or killed in the course of the other crime, or there was a substantial likelihood of serious injury or death resulting from the acts of the prisoner.
(b) Numerous Crimes. The other crime was part of a series of crimes which occurred during a single period of time, show a pattern of similar conduct, and resulted in convictions, but have not resulted in enhancement under Section 2286.
(c) Crimes of Increasing Seriousness. The other crime, when considered with the principal crime, indicates a significant pattern of increasingly serious criminal conduct.
(d) Independent Criminal Activity. The other crime and its objective were independent of the life crime or the other crime was committed at a different time and place, indicating a significant pattern of criminal behavior rather than a single period of aberrant behavior.
(e) Status. The prisoner was on probation or parole or was in custody or had escaped from custody when the crime was committed.
(f) Other. The other crime involved any of the circumstances in aggravation enumerated in the Sentencing Rules for the Superior Courts.

§ 2288. Circumstances in Mitigation of the Additional Term for Other Crimes.
Circumstances which may justify imposition of a term for another crime lower than that suggested in Section 2286, or which may justify imposition of no enhancement, include:
(a) Minor Punishment for Other Crime. The period of incarceration imposed for the other crime as a condition of probation or as the sentence for the other crime is equal to or less than the additional term provided Section 2286.
(b) Successful Completion of Probation or Parole. The prisoner's performance on probation or parole for the other crime was good, and the prisoner was free of criminal convictions for a reasonable period of time following probation or parole.

(c) Insignificant Prior Record. The other crime is unrelated to the principal offense in time, or in the kind of criminal conduct involved, or the apparent motivation or cause of the criminal conduct indicates no significant pattern of criminal behavior.
(d) Probation. The prisoner was granted probation after conviction for the other offense.
(e) Other. The other crime involved any of the circumstances in mitigation enumerated in the Sentencing Rules for the Superior Courts.

§ 2289. Fixing a Parole Date: Computation.
The terms set for the life crime, specific enhancements and other crimes shall be added together resulting in a total life term. Any postconviction credit shall be deducted (see Sections 2342–2344) from any term too large shall be added to the total life term. The adjusted life term shall be added to the reception date for the life crime.
The reception date is the date the prisoner was received for the life crime under Penal Code Section 2900 or 1203.2a. If the prisoner was serving a nonlife term at the time of sentencing for the life crime the reception date is the date the prisoner was returned from court with the new life term. If the prisoner was serving a life term at the time of sentencing for another life crime, the reception date is the date the prisoner was received for the original life crime under Penal Code Section 2900 or 1203.2a.

> If the time already served by the prisoner exceeds the term set pursuant to this article, the panel's order shall read "Prisoner to be released upon time already served," and the prisoner shall be released, in accordance with Article 9 of this chapter.

§ 2290. Postconviction Credit.
(a) General. Life prisoners may earn postconviction credit for each year spent in state prison. Postconviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, postconviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may postconviction credit advance a release date earlier than the minimum eligible parole date. Provided, however, postconviction credits which would advance the parole release date to less than 180 days from the date of the hearing shall not be granted unless or until the parole review authority of the Governor is exercised pursuant to Penal Code section 3041.1.

> (b) Amount of Credit. Postconviction credit shall be granted to life prisoners in a manner which allows similar amounts of time to prisoners in similar circumstances.

> The suggested amount of postconviction credit is 4 months for each year served since the date the life term started. The board may grant more or less than 4 months annual postconviction credit when the prisoner's performance, participation or behavior warrants such adjustment of credit. Less than 4 months credit may be granted if the prisoner fails to meet the general expectations set forth in Section 2290(c). More than 4 months credit may be granted if the prisoner demonstrates exceptional performance in a work assignment, exceptional participation in self-help or rehabilitative programs, or other exemplary conduct. If a panel grants more than 4 months of postconviction credit at an annual hearing, the case shall be reviewed as provided in Sections 2041–2043.

(c) Criteria. In determining the amount of postconviction credit to be granted, the panel shall consider the following:
(1) Performance in Institutional Work Assignments. All life prisoners are presumed to work and to perform satisfactorily in work assignments (see CDC Rules 3040 and 3041). Lack of a work assignment shall not necessarily prevent the granting of postconviction credit. The panel shall consider the nature and availability of work assignments at the institution, the prisoner's custody status, and any other impediments to the prisoner's receiving a work assignment.
(2) Participation in Self-help and Rehabilitative Programs. All life prisoners are presumed to participate in programs for self development (refer to CDC Rules 3040 and 3041). Lack of program participation shall not necessarily prevent the granting of postconviction credit. The panel

27

# EXHIBIT C

0169

Lynch (1972) 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921; In re Williams (1975) 53 Cal.App.3d 10, 12--13, 125 Cal.Rptr. 457.) Directive 75/20 was designed to inaugurate a new policy. In effect, it is a set of directions from the Chairman of the Adult Authority to the case-hearing representatives who recommend and the panels of Authority members who establish parole and discharge dates. (See Pen.Code, s 5076.1.) As issued in April 1975, the directive included standards for the establishment of discharge (i.e., sentence-fixing) dates as well as prole dates. On June 30, 1975, the California Supreme Court filed its decision in In re Rodriguez, supra, holding that the Authority must fix sentences within each statutory range proportionately to the culpability of the individual offender and calling attention to the distinct character of the Authority's sentence-fixing and parole-granting functions. (14 Cal.3d at pp. 652--653, 122 Cal.Rptr. 552, 537 P.2d 384; see also, People v. Wingo (1975) 14 Cal.3d 169, 183, 121 Cal.Rptr. 97, 534 P.2d 1001.) As a consequence, the Authority's chairman issued a second directive (No. 75/30, dated September 2, 1975), establishing separate standards for term-fixing and limiting the April directive, No. 75/20, to the single subject of parole. We summarize the basic features of the latter:

The directive declares that every effort will be made to establish parole dates the first time the inmate appears for regularly scheduled parole consideration. For each parole applicant, it establishes a Base offense (i.e., the most serious offense for which he is currently committed). It then directs selection of either a Typical or an Aggravated range for the base offense. Attached to the directive is a table of felonies with typical and aggravated ranges. (FN3) Exacerbating activities accompanying the *527 crime will cause selection of an aggravated rather than typical range.

Within the appropriate base range, the panel is then to fix a Base period of confinement. The primary factor in fixing the base period is the seriousness of the commitment offense; other factors such as the inmate's [54 Cal.App.3d 1035] age, pattern of criminality and 'serious or major disciplinary offenses' (FN4) may be considered. A period of confinement may be fixed below or above the base range when unusual features exist, but the reason must be noted in writing. Once the base period is selected, it may then be adjusted upward or downward. A downward adjustment of 6 to 18 months may be made for a youthful offender sentenced under Penal Code section 1202b. The base period may be increased for post-commitment offenses. Other augmenting factors are

prior felony convictions and prior, concurrent and consecutive prison sentences. Each increase is expressed in a range of months for each augmenting factor. Thus, for a court-imposed term which is concurrent with the base offense, the base confinement will normally be increased by 3 to 12 months; for a consecutive term, 12 to 24 months; for a prior completed prison term, either 3 to 9 months or 9 to 24 months as indicated by the seriousness of the earlier offense. (FN5)

Petitioner Stanley was committed to prison in April 1972 for two separate offenses: (1) sale of drugs, an offense punishable by a term of five years to life, parole being prohibited for the first three years; (2) possession of drugs for sale, punishable by 2 to 10 years' imprisonment, with parole ineligibility during the first two years. The sentencing court decreed that the terms were to be served concurrently. (Pen.Code, s 669.) In April 1975, after Stanley had served three years, the Adult Authority fixed his period of confinement as follows: 40 months (within the 38 to 48-month base range for sale of drugs), increased by 10 months (within the base range of 3 to 12 months) for his separate concurrent sentence. The 50-month confinement resulted in a grant of parole effective in June 1976, four years and two months after his entry into prison.

Petitioner Reed was received in prison December 1974, with concurrent sentences for narcotics possession (2 to 10 years, with parole ineligibility during the first two years) and for possession of a gun by an ex-felon (up to 15 years). His record included a prior Dyer Act conviction. He was entitled to credit for confinement prior to judgment. [54 Cal.App.3d 1036] In July 1975 the Adult Authority entered a parole order, specifying confinement of 26 months (selected from the base range of 26 to 36 months) for narcotics possession, plus nine months for the firearm offense and three months for the Dyer Act conviction, decreased by approximately nine months for the pre-judgment confinement. The adjusted period of prison confinement was thus fixed at 29 months, resulting in a parole date of May 1977.

The two petitioners, In propria personam, raised a relatively narrow objection. They argued that the Adult Authority, acting under Directive 75/20, has postponed their parole dates by utilizing the concurrent sentences as an augmenting factor, thereby destroying the concurrency decreed by the sentencing court; that the Adult Authority's action transcended constitutional *528 limits, being a partial nullification of a judicial act. We appointed counsel

© 2005 Thomson/West. No claim to original U.S. Govt. works.

29

# EXHIBIT D

0171

○    One for the representative of the DA's office.

**74040.6        Parole Board Rules Hearings (In re Stanworth)**

The California Supreme Court held that life prisoners who committed their offenses prior to July 1, 1977 are entitled to have parole dates established under the guidelines in effect prior to July 1, 1977.

The court further held that denial of the establishment of parole dates of these prisoners under the earlier guidelines violated the constitutional prohibitions against ex post facto laws.

**74040.6.1        Eligibility**

A life-term inmate is entitled to a parole consideration hearing under Parole Board Rules (PBR) if:

○    The offense was committed on or before June 30, 1977; and,

○    The inmate presently has a parole date that was granted under BPT or CRB Rules, but has not received a parole date under PBR.

**74040.6.2        Hearing Guidelines**

The BPT shall use the parole consideration guidelines in the PBR 2200 through 2360 (CCR (15) (2) Reg 76, No. 21, 5/22/76).

**74040.6.3        Panel Composition**

The hearing shall be conducted by two deputy commissioners.

**74040.6.4        Inmate Hearing Rights**

The inmate shall have the rights specified in PBR C 2110 through 2119 [CCR (15) (2) Reg 76, No. 21, 5/22/76].

**74040.6.5        Hearing Packets**

Two hearing packets detailed in DOM 74040.3.7 shall be prepared for these hearings.

**74040.7        Progress Hearings**

A progress hearing shall be scheduled periodically after a life-term inmate has had a parole date established.

The panel shall determine whether a previously set parole date should be advanced because of the inmate's positive conduct in prison or whether there are changes in circumstances that might lead to an earlier parole date.

**74040.7.1        Panel Composition for Progress Hearings**

Progress hearings shall be conducted by a panel of three, two of whom shall be commissioners.

**74040.7.2        Hearing Procedures**

The inmate is not entitled to an attorney.

A representative from the DA's office of the committing county shall not attend.

No PC 3042 notices are required.

Progress hearings are scheduled as "trailers" to the regular lifer calendar or they may be formally scheduled.



0108

# EXHIBIT E

0174

# SUMMARY OF COMMITMENT DATA

| | Credits Forfeited | Restored Credits | Additional Credits | Discharge Date | Effective Date |
|---|---|---|---|---|---|
| OFFENSE: Robbery 1st & ~~Theft of Vehicle~~ 211 P.C. | | | | | |
| ~~& 10851 V.C.~~ | | | | | |
| +5-19-72 Ct's disch at Max. | | | | | |
| TERM: 5-Life & ~~4~~ 5 Years 2 Cts. cc | | | EDD | 5-19-78 | |
| COUNTY: SAN FRANCISCO | | | | | |
| COUNTY CASE NO.: 68593, 68638 & 69250 | | | | | |
| JUDGE: H. J. NEUBARTH | | | | | |
| Received RGC CMF 5-19-67 | | | | | |
| 4-11-67 Received CTF, North (g) | | | | | |
| NOV 18 1968 DENIED. PLACE ON A. A. 11-69 MR CAL. | | | | | |
| PC 5077 Not Complied with. g | | | ) | | |
| MAR 4 1969 Rec'd CTF-Central α | | | | | |
| JUL 7 1969 Rec'd DVI | | | | | |
| OCT 8 1969/(w) DENIED. PLACE ON 11/71 MR CAL. | | | | | |
| Acc 5077 PC c/w. | | | | | |
| -4-70 Rec'd SQ | | | | | |
| -1-71 TFA 7½ yrs + 5 yrs cc on | | | | | |
| 2 cts cc. Supp Bd & Unit | | | | 11-19-74 Reapp | |
| 2-14-71 Ref TCR | | | | | |
| -20-71 Paroled | | | | | |
| -8-73 PV WNT REC'D RGC cmF-En. | | | | | |
| 5-73 REC'D San Quentin. | | | | | |
| -16-73 REC'D RGC CMF FOR Proc. | | | | Life | |
| -12-73 Parole suspended. | | | | | |
| 3-12-73 Rec'd SQ | | | | | |
| 3-20-73 RG Ct 3(1), BOG Cts 1 & 2(2), | | | | | |
| FG Cts. 1 & 2(2). Revoked Denied. | | | | | |
| Once on 3/76 RG Review Cal. | | | | | |
| 5077 PC Complied with. | | | | | |
| 2-18-76 Denied. Place on Prog Calendar. | | | | | |
| PC Section 3046 Complied with. | | | | | |
| Should be placed on calendar | | | | | |
| for In re Rodriguez. | | | | | |
| 8-14-76 Remain on 2/79. Cal. | | | | | |
| 8-76 AA PRIMARY TERM | | | | | |
| CASE 68593 CT 1 OFFENSE Rose bd (11 yrs) | | | | 5-19-78 | |
| CASE 68638 CT 1 OFFENSE Theft of Vehicle (5 yrs) | | | | 5-19-72 | |
| CASE 69250 CT 1 OFFENSE Theft of Ve (5 yrs) | | | | 5-19-72 | |
| CASE ~~843.410~~ CT 1 OFFENSE Murder 1st w/3 PFC (Life) | | | | Life | |
| 8-77 Continued to Revised CDC 112 | | | | | |

DEPARTMENT OF CORRECTIONS                                STATE OF CALIFORNIA

**CUMULATIVE CASE SUMMARY**
**CHRONOLOGICAL HISTORY**

| DATE | CHRONOLOGICAL LISTINGS | INITIAL | TIME LOST | TIME RESTORED | RELEASE DATE |
|---|---|---|---|---|---|
| 5-18-77 | Continued Posting | | | | |
| 10-12-77 | CRB Recommendation Hearing, Place on 7-78 parole consideration hearing. | L. J. | | | |
| 10-30-78 | Parole denied, next hearing 12/79 Subsequent. | | ✓ | | |
| 11-2-79 | Parole denied. Pl. on 10/80 Subsequent calendar. Rx participate psych therapy | G. | | | |
| 8-22-80 | File audited | G. | | | |
| 10-2-80 | Parole denied. Place on 0/81 Cal. | ms | | | |
| 6-2-81 | File audited | B.R. | | | |
| 9-17-81 | Subsequent hearing Parole denied. Psychiatric referral. Place on 9/82 parole consideration calendar | ng | | | |
| 10-14-82 | Subsequent hearing. Parole denied. Schedule for 10/83 Subsequent calendar. | sll | | | |
| JAN 11 1984 | REC'D FOLSOM | | | | |
| 3-12-84 | Rec'd S.Q. | ams | | | |
| 11-29-83 | Sub. Hrg. Parole denied. Pl. on 11/84 Sub. Cal. | ars | | | |
| 11-1-84 | Sub. Hrg. Parole denied. Pl. on 11-85 sub. Cal. | ars | | | |
| 11-22-85 | Sub. Cal. Parole denied 2 yrs. per 3041.5 (b) (2) P.C. Pl. on 11/87 Sub. Cal. | ars | | | |
| 11-18-87 | Sub hearing. Parole denied 2 yrs. Place on 11/89 Sub Cal. | ars | | | |
| 1-17-89 | Transfer audit | SP | | | |
| 1/20/89 | Notice Requested per 3058.6 PC REC'D CSP FOL NEW FAD. | IB | | | |
| 6-7-89 | Intake Audit | WB | | | |
| 10-18-89 | Sub. Hrg. Parole Denied. Place on 10-91 Sub cal. | BH | | | |

| NUMBER | NAME | INSTITUTION | PAGE |
|---|---|---|---|
| B-08892 | McCright, Calvin | S.Q. | 2 |

# EXHIBIT F

STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

DECLARATION OF ALBERT M. LEDDY

I, ALBERT M. LEDDY, hereby declare:

1) I was an attorney at law, currently retired. After graduating from Boalt Hall, University of California at Berkeley, I practiced law until 1983 including serving as Deputy District Attorney and then District Attorney of Kern County, California, from 1952 to 1965 and again from 1970 to 1983.

2) Between 1983 to 1992 I served as a Commissioner and then as Chairman of the Board of Prison Terms (BPT) pursuant to my appointment and re-appointments to those positions by Governor George Deukmejian.

3) During approximately 9 years of service as BPT Chairman and Commissioner, parole hearings were conducted as now for "life" prisoners (with a maximum prison term of life and a minimum of between 7 and 25 years, reduced for work and good behavior), by 3-member BPT panels at intervals prescribed by the California Penal Code statutes and the parole regulations in the Code of Regulations, Title 15, Division 2, Board of Prison Terms, §§ 2000 et seq.

4) From 1983 to 1990 BPT panels became more reluctant to grant paroles in accordance with Penal Code § 3041(a) (which requires that at the initial hearing a parole date "shall normally" be set), resulting in a substantial, steady decline in the percentage of parole dates granted at hearings. This decline was caused by increasing political pressure and new BPT Commissioner appointees who disfavored paroling life prisoners.

5) After Governor Wilson's election in 1990, he substantially intervened to reduce parole grants; in actual effect his policy practically eliminated paroles. He accomplished this, first, by appointing and re-appointing BPT Commissioners known to disfavor parole or to favor a "no-parole" policy. These appointees were all crime victims, former law enforcement personnel or Republican legislators who had been defeated in elections and needed a job.

6) Governor Wilson made his "no-parole" policy known in several ways including, I believe, through statements quoted by the media and possibly through the Youth and Adult Correctional Agency Secretary, although I can't say I know this to be fact. I am aware that he wanted previously set parole dates rescinded.

Inasmuch as I expressed my dissatisfaction verbally and in my brief, I'm sure that my objections helped me not to get re-appointed.

12) Accordingly, the effect that Governor Wilson has exerted upon BPT personally, through his politically-based policy, by his BPT appointments, and by his intervention to rescind and reverse parole grants, has been to remove any reasonable possibility of parole for practically all of the thousands of California prisoners serving terms of life with the possibility of parole.

13) Such a "no-parole" policy is contrary to Penal Code § 3041 which requires that BPT "shall normally" set a parole date in most cases, i.e., unless the prisoner is shown to pose a threat to public safety, and that BPT panels shall declare prisoners "suitable" for a future release date and set that release date unless a preponderance of the evidence presented at the hearing demonstrates that the prisoner "will pose an unreasonable risk of danger to society if released from prison."

14) Although the reluctance to grant parole began in the early 80's, under Governor Wilson's regime BPT panels denied parole in over 99% of cases by employing procedures that violate the parole statutes and regulations. Primarily used are offense factors. BPT panels find prisoners "unsuitable" for parole based mainly or entirely on the facts and circumstances of their offense instead of their level of dangerousness, as reflected by performance, rehabilitation and expert evaluation in their prison records. Because the facts and circumstances of crimes do not change, the procedure effectively increases all such sentences from life with possibility of parole to life without any possibility of parole. Despite contrary regulations and statutes, BPT's chief counsel and Executive Officer urged me and the other Commissioners to deny paroles based on the prisoners' offenses.

15) The procedure also eliminates BPT's duty to set parole dates because parole can't be granted for those found "unsuitable." This renders illusory BPT's term-setting obligation and lifers' opportunity to parole. Even the most deserving prisoners shown overwhelmingly not to pose an unreasonable risk (or any) risk of danger to the public if released have not, cannot and will never receive parole under such a policy.

16) After 1992, when my final term as BPT Commissioner expired, I re-entered the private practice of law. I represented an inmate at his BPT hearing. Although the inmate had a statutory right to call witnesses, who could have refuted the allegations the panel used to deny

regulations governing the parole process. Such a policy will exacerbate an already unacceptable situation which is backlogging hundreds, perhaps more, of life prisoners who are already beyond the term they would normally have served but for the "no-parole" policy.

I declare, under penalty of perjury, that the facts I have stated are true and correct. My expressions of belief as to each specified facts are based on the reasons I have given as to each such fact. I would be willing to testify to same in a court of law. I so swear, this ___8th___ day of __march__ 1999, at Los Osos, California.

Albert M. Leddy
Declarant

38

PROOF OF SERVICE BY MAIL

(C.C.P. Sec. 101a #2015-5, U.S.C. Sec. 1746)

I, COLVIN MCCRIGHT, am a resident of Pelican Bay State Prison, in the County of

Del Norte, State of California. I am over the age of eighteen (18) years and am a party to this action.

My State Prison address is: Pelican Bay State Prison, P.O. Box 7500, Housing Unit A3 Cell

Number 131, Crescent City, CA 95532-7500.

On the 28 day of JANUARY 2008, I served the following (set forth the exact

title of document[s] served):

COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983,
28 U.S.C. §§ 2201, 2202, FEDERAL RULES OF CIVIL PRO-
CEDURES, RULE 65(a).

On the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with

postage thereon fully paid, in the United States mail, in a receptacle so provided at Pelican Bay State

Prison, Crescent City, CA 95532, and addressed as follows:

CLERK OF THE UNITED
STATES DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA
450 GOLDEN GATE AVE.
SAN FRANCISCO, CA. 94102

I declare under penalty of perjury that the foregoing is true and correct:

Colvin McCreight                    1/28/08
Inmate Signature                    Date