MR. COLVIN McCRIGHT-B-08892
P.O. BOX 7500: A3-131
CRESCENT CITY, CA. 95532



PLAINTIFF IN FORMA PAUPERIS


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA


COLVIN McCRIGHT.
        PLAINTIFF

    VS.

ARNOLD SCHWARZENEGGER, GOVERNOR,
            ET AL.

        DEFENDANTS

NO. CV 08-0804-JW
ORDER TO SHOW CAUSE
AND TEMPORARY
RESTRAINING ORDER


    UPON THE COMPLAINT FILED IN THIS COURT ON FEB. 5, 2008,
THE SUPPORTING DECLARATION, SUBMITTED HEREWITH, IT IS
REQUESTED THAT DEFENDANT(S); GOVERNOR, ARNOLD SCHWARZE-
NEGGER AND WARDEN, ROBERT HOREL, ET AL. SHOW CAUSE IN
THIS UNITED STATES DISTRICT COURT, 450 GOLDEN GATE AVE.,
WITHIN 30 DAYS, AT 10:00 AM, WHY A TEMPORARY RESTRAINING
ORDER SHOULD NOT ISSUE PURSUANT TO RULE 65(a) OF THE
FEDERAL RULES OF CIVIL PROCEDURES ENJOINING DEFENDANTS,
THEIR SUCCESSORS IN OFFICE, AGENTS, EMPLOYEES AND ALL
OTHER PERSONS ACTING IN CONCERT AND PARTICIPATION
WITH THEM FROM (1) RETALIATING AND/OR HARRASSING
PLAINTIFF BY TRANSFERING HIM OUTSIDE THE JURISDICTION
OF THIS COURT, AND (2) FURTHER CANCELLING PLAINTIFF
TERM HEARING OR SUBSTITUTING IT WITH PRO FORMA
SUITABILITY HEARINGS IN THE MANNER DEMONSTRATED BY

-1-

A PURPORTED "NOTICE OF SUITABILITY HEARING" PROVIDED TO
PLAINTIFF ON JUNE 10, 2008. SEE EXHIBIT A.

IT IS FURTHER REQUESTED THAT EFFECTIVE IMMEDIATELY,
AND PENDING THE HEARING AND DETERMINATION OF THIS ORDER
TO SHOW CAUSE THE DEFENDANTS, ARNOLD SCHWARZENEGGER
AND ROBERT HOREL AND EACH OF THEIR OFFICERS, AGENTS,
EMPLOYEES, AND ALL OTHER PERSONS ACTING IN CONCERT
OR PARTICIPATION WITH THEM, ARE RESTRAINED FROM (1)
TRANSFERING PLAINTIFF OUTSIDE THE JURISDICTION OF THIS
COURT AND/OR TRANSFERING PLAINTIFF TO ANOTHER PRISON
FOR SO-CALLED INSTITUTIONAL CONVENIENCE, AS WAS DID
BY FOLSOM PRISON OFFICIALS IN 1992 WHEN PRISON OFFICIALS
TRANSFERED PLAINTIFF TO PELICAN BAY STATE PRISON TO AVOID
AN ACTIVE LITIGATION; AND USING THE TRANSFER AS A
BASIS TO MAINTAIN THEIR CLAIM THAT THE CASE WAS MOOT;
BECAUSE "... PETITIONER IS NO LONGER ... INCARCERATED
AT FOLSOM PRISON." SEE EXHIBIT B, PAGE 4.; AND (2)
ENJOIN DEFENDANTS FROM SCHEDULING SO-CALLED PRO FORM
SUITABILITY HEARINGS IN PLACE OF THE "TERM HEARINGS"
THAT WERE MANDATED BY CHAIRMANS DIRECTIVE 75/30, AND
JUNE 1, 1976 TITLE 15 WHEN PLAINTIFF BECAME ELIGIBLE
FOR PAROLE ON AUGUST 30, 1979.

PLAINTIFF CONTENDS HE CAN PROVE THE SUITABILITY
PROCEDURES ARE PROHIBITED BY THE FEDERAL EX POST FACTO
LAW, AND VIOLATE THE 14TH AMENDMENT OF THE U.S.
CONSTITUTION. THEREFORE, IT IS LIKELY PLAINTIFF WILL
PREVAIL; IN THAT, THE EX POST FACTO CLAIM IS
STARE DECISIS.

JUNE ____ 2008

Colvin McCright
COLVIN MCCRIGHT
PLAINTIFF

# EXHIBIT A

STATE OF CALIFORNIA - Department of Corrections and Rehabilitation    Arnold Schwarzenegger, Governor

**Board of Parole Hearings**
Post Office Box 4036
Sacramento, CA 958124036

---

## NOTICE OF HEARING

DATE:    **March 4, 2008**                                              🌀 **CANCELLED**

TO:    **SCOTT HOXENG**
       **250 LEAVITT MALL**
       **CRESCENT CITY CA  95531**


RE:    **Attorney Retained at Parole Hearing - CALVIN, MC CRIGHT**
                                                    **B08892**
Dear    **SCOTT HOXENG**

This is your confirmation to represent the above individual as follows:        🌀 **CANCELLED**

| | |
|---|---|
| Type of Hearing: | Subsequent Suitability Hearing |
| Date / Time: | June    10, 2008 10:30 AM |
| Institution: | Pelican Bay State Prison |
| | 5905 LAKE EARL DR. |
| | CRESCENT CITY, CA 95531 |
| Attorney Retained By: | State |

Please make arrangements to interview your client and review his/her file at least 30 days prior to the hearing.  To ensure arrangements will be made for your client to report promptly for the interview, contact the Institution Hearing Coordinator no later than 48 hours before the interview.

You should anticipate a representative from the district attorney's office will participate in the hearing, either by sending a representative to the institution or via video conference.  In addition, participation by the victim of the crime or the victim's next of kin may also occur with their appearance at the hearing or via video conference.

If you have any questions regarding this matter, please contact Linn Austen at (916) 324-0800.

Sincerely,


**Linnette Austen, Manager**
**Hearing Support Unit**

cc: C-File, Inmate

🌀 CANCELLED

*panel not available*

# EXHIBIT  B

6

```
ENDORSED
JUL 2 2 1992
By K. GRIFFIN, Deputy
```

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SACRAMENTO

In re                          )    No. 110971        Dept. 4
                               )
COLVIN McCRIGHT                )        ORDER GRANTING
                               )    HABEAS CORPUS RELIEF
On Habeas Corpus.              )
_____)

        The Court issued an order to show cause regarding the
petitioner's allegations on April 13, 1992.  It has evaluated
all of the pleadings filed by petitioner and respondent.

        For the reasons set forth hereinafter, the Court GRANTS
petitioner's following requests for habeas corpus relief.  The
Court DENIES his request for monetary damages.

        1.   IT IS ORDERED that Folsom Prison officials immediately
cease and desist from compelling inmates to waive their
regulatory rights to designate the disposition of undeliverable
quarterly package items as provided in Title 15, California Code
of Regulations, section 3147 (a)(6).  Specifically, Folsom
Prison officials are ordered to immediately cease and desist
from requiring inmates to agree to provisons of a "no
exceptions" agreement which authorizes the receiving and release

1  sergeant "to confiscate and dispose of any and all" unacceptable

2  items as a precondition for the receipt of allowable quarterly

3  package items.  See Exhibit 3, attached to the Attorney

4  General's Return, for a copy of the "no exceptions" agreement

5  language at issue.

6      2.    IT IS FURTHER ORDERED that Folsom Prison officials

7  immediately cease and desist from enforcing provisions of

8  Operations Procedure No. 2 which prevent inmates from

9  designating outside individuals or organizations to receive

10  undeliverable quarterly package items.  The Court specifically

11  refers to the language contained in Exhibit 8, a copy of a

12  portion of Operations Procedure No. 2, attached to the Attorney

13  General's Return:

14      c.    Quarterly Package: . . . . . Any items
            not listed as authorized on the appropriate
15            quarterly package list will become donated
            property.  The inmate will not be afforded
16            the opportunity to return it to the sender.

17      3.    IT IS FINALLY ORDERED that petitioner's compensation

18  request for items seized from his March 21, 1991 quarterly

19  package is DENIED.

20  I.    THE PETITIONER STATED A PRIMA FACIE CASE
        FOR RELIEF IN A PETITION FILED ON MARCH 10, 1992.

21      In a habeas petition filed on March 10, 1992, petitioner

22  alleged that Folsom Prison officials illegally disposed of

23  undeliverable items contained in his quarterly package without

24  his approval.  The Court issued an order to show cause in regard

25  to the petitioner's allegations on April 13, 1992.

26      Petitioner made the following allegations in support of his

27  requests for habeas corpus relief:  On March 21, 1991, he

28  received a quarterly package from a correspondent.  He signed a

"no exceptions" agreement in order to receive the contents of the package.

A "no exceptions" agreement states that prison officials may dispose of undeliverable quarterly package items by donating them to charity or destroying them. Petitioner acknowledged that he signed the agreement, but maintained that he could not receive the contents of his package without doing so. He was not permitted to designate an outside individual or organization for the receipt of the items.

Petitioner asserted that the "no exceptions" agreement is in conflict with the provisions of Title 15, California Code of Regulations, section 3147(a)(6). Prison officials compelled him to execute the "no exceptions" agreement as a condition of receiving his package. He also contended that Folsom Prison Operations Procedure No. 2 illegally prohibits inmates from designating an outside individual for the receipt of undeliverable items. Finally, he maintained that the procedure is really a new regulation which has not been promulgated in compliance with the Administrative Procedure Act.

Petitioner exhausted his administrative remedies within the Department of Corrections. All three of his administrative appeals were denied. See Exhibit B, attached to the petition.

Petitioner requested that the Court order Folsom Prison officials to desist from compelling inmates to execute the "no exceptions" agreement as a precondition of receiving quarterly packages. He further requested that the Court order Folsom Prison officials rescind part of Operations Procedure No. 2. More specifically, he requested that the Court order them not to

3

1  prevent inmates from designating outside individuals for the

2  receipt of undeliverable contraband package items.  Finally, he

3  requested that the Court order Folsom Prison official to

4  reimburse him for the property confiscated from March 21, 1991

5  quarterly package.

6  ## II.  BOTH RESPONDENT AND PETITIONER HAVE FILED PLEADINGS
   ## IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE.

7  Respondent and petitioner have filed timely pleadings in

8  response to the order to show cause which have been evaluated by

9  the Court.  On May 18, 1992, the Attorney General filed a return

10 to the order to show cause on behalf of respondent.

11 The Attorney General presents two primary arguments in

12 opposition to petitioner's claims.  First, he maintains that the

13 petition should be dismissed as moot.  He states that petitioner

14 is no longer subject to the conditions of confinement that he

15 contests.  Second, he asserts that prison officials did not

16 wrongfully destroy or donate petitioner's unacceptable package

17 items on or about March 20, 1991.

18 In regard to his first argument, the Attorney General

19 emphasizes that petitioner is no longer incarcerated at Folsom

20 Prison.  Accordingly, he is no longer subjected to the

21 undeliverable package items disposition provisions of Operations

22 Procedure No. 2.  There is no longer any actual controversy

23 between the petitioner and the Department of Corrections.

24 Habeas corpus is not the appropriate remedy for him to seek

25 monetary damages for the loss of any package items.  See pages 4

26 through 6 of the Attorney General's Return.

27 In regard to his second argument, the Attorney General

28 asserts that prison officials did not wrongfully destroy or

4

donate petitioner's contraband package items.  He states that
prison officials relied upon Penal Code section 5058, Title 15,
California Code of Regulations, section 3190, and Operations
Procedure No. 2 as a basis for disposing of the items.  He
asserts that Operations Procedure No. 2 is entirely consistent
with the provisions of Title 15, California Code of Regulations,
section 3147.  The Attorney General vigorously denies that the
implementation of Operations Procedure No. 2 is subject to the
Administrative Procedure Act.  Furthermore, the petitioner
consented to the facility's disposition of the contraband.

The Court found a number of the exhibits attached to the
Attorney General's return to be significant.  Exhibit 3 is a
copy of the address label executed by petitioner and the sender
of his package.  It is imprinted with the language "NO
EXCEPTIONS AGREEMENT".  It states that the receiving and release
sergeant is authorized to dispose of any and all items which are
not on the approved package list.

Exhibit 4 is a copy of regulations issued by Warden Borg
concerning quarterly and annual packages.  Item number 2 in the
regulatory list states that "Packages will only be accepted
using the special packaging address label."  It further states
that "Both the inmate and the sender must sign the address label
indicating that they have read and agree to the requirements
stated thereon."  Item number 6 states:  "Any items not in
compliance with these rules or the listing on the other side
will be confiscated and disposed of per Institutional
Procedures.  Confiscated property will not be returned to sender
once a package is accepted for delivery to an inmate."

5

Exhibit 5 is a declaration from P. Mortimore, a receiving and release sergeant at Folsom Prison. It was amended in a filing by the Attorney General on June 24, 1992. He states that both inmates and a senders of a packages to inmates must execute the "no exceptions" agreement enumerated on the mailing label. The package will not be accepted unless the "no exceptions" mailing label is used. In signing the form, both the inmate and the sender are consenting to the agreement. Most undeliverable inmate property contained in packages is donated to area charities.

Exhibit 8 is a copy of a portion of Folsom Prison's Operations Procedure No. 2 for Inmate Personal Property/Receiving. It states in pertinent part:

> Quarterly Package: Approved quarterly packages lists outline rules which must be followed and items which may be included. Any items not listed as authorized on the appropriate quarterly package list will become donated property. The inmate will not be afforded the opportunity to return it to the sender.

Petitioner filed a timely traverse on June 8, 1992. He maintains that his request for habeas corpus relief is not moot because of his transfer to Pelican Bay Prison. He contends that it involves an issue of important public interest which is likely to recur. He notes that the Folsom Prison "no exceptions" label mailing policy has been adopted at Pelican Bay.

Petitioner asserts that he is entitled to either the return of his seized property or reimbursement for its loss. He contends that prison officials wrongfully destroyed or donated his seized property. He rejects the Attorney General's argument that Title 15, California Code of Regulations, section 3190

authorizes Folsom Prison officials to require inmates to execute the "no exceptions" label. It does not permit them to ignore the provisions of Title 15, California Code of Regulations, section 3147(a)(6).

Petitioner denies that he ever consented to the forced donation or destruction of contraband package items. Prison officials cannot force him to consent to an illegal package confiscation policy. Additionally, the policy is clearly onerous as inmates cannot receive packages unless they execute the labels. Lastly, he persists in his claim that the contested provisons of Operations Procedure No. 2 constitute a new regulation which has not been promulgated in compliance with the Administrative Procedure Act.

The Attorney General has filed a reply to petitioner's traverse which essentially reiterates the contentions of his return. Likewise, petitioner has filed a response to the Attorney General's reply which essentially reiterates the contentions of his traverse.

### III. PETITIONER IS ENTITLED TO THE HABEAS CORPUS RELIEF SPECIFIED IN THIS ORDER.

It is evident that petitioner is entitled to the relief specified in this order. The Court is legally compelled to address petitioner's substantive claims despite their mootness. The Court finds that there is no regulatory basis for the undeliverable package item disposal policy currently in effect at Folsom Prison. The Court therefore orders that prison officials immediately desist from enforcing the policy set forth in Operations Procedure No. 2. The Court further finds that petitioner did not consent to the donation or destruction of

undeliverable items by executing the "no exceptions" agreement. His consent was coerced by the refusal of prison officials to deliver his acceptable package items if he did not execute the agreement.

**A.    The Petition Is Not Moot.**

Initially, the Attorney General asserts that the petition is now moot. He, therefore, argues that the Court should deny the petition without addressing petitioner's substantive claims.

The Court rejects the Attorney General's assertion. Admittedly, petitioner is now incarcerated at Pelican Bay State Prison. There is no current likelihood that petitioner will be subjected to the contested Folsom Prison package item confiscation policy. But, petitioner correctly emphasizes that a court will still rule upon a moot dispute if it is a matter of broad public interest which is likely to recur. United Farm Workers v. Superior Court (1975) 14 Cal.3d 902, 906; In re William M. (1970) 3 Cal.3d 16, 23.

The Court accepts petitioner's argument that Folsom Prison's allegedly illegal package receipt policy constitutes a matter of broad public interest which is likely to recur. It has accordingly addressed the substantive merits of petitioner's claims despite the mootness of the petition.

**B.    Petitioner Has Successfully Demonstrated that Folsom Prison Officials Are Illegally Compelling Inmates to Consent to the Donation or Destruction of Undeliverable Quarterly Package Items.**

**1.    Folsom Prison Officials Are Coercing Inmates to Consent to the Donation or Destruction of Undeliverable Package Items as a Condition of Receiving Allowable Package Items.**

////

8

1    Petitioner has established that Folsom Prison officials
2 coerced him, and are coercing other inmates, to consent to the
3 donation or destruction of unacceptable package items.  On
4 March 21, 1991, petitioner received a quarterly package from a
5 correspondent.  In order to receive his package, he signed a "no
6 exceptions" agreement.  In pertinent part, it states that prison
7 officials may dispose of unacceptable quarterly package items by
8 donating them to charity or destroying them.  Pleadings filed by
9 the Attorney General indicate that Folsom Prison officials
10 continue to require inmates to agree to these provisions of the
11 "no exceptions" agreement.

12    Petitioner would not have otherwise received the allowable
13 items contained in his March 21, 1991 package if he and the
14 sender had not executed the "no exceptions" agreement.  He was
15 compelled to accept the disposition of unacceptable package
16 items by the receiving and release sergeant in order to receive
17 his allowable package items.  Civil Code section 1569(2) states
18 that the unlawful detention of a person's property constitutes
19 duress.  Despite this fact, the Attorney General persists in
20 maintaining the fiction that the petitioner consented to the
21 disposition of his unacceptable package items.  The Court
22 declines to do so.

23    Exhibits attached to the Attorney General's return confirm
24 the coercive nature of the "no exceptions" package agreement.
25 Exhibit 4 is copy of regulations issued by Warden Borg regarding
26 quarterly and annual inmate packages.  Exhibit 8 is a copy of
27 Operations Procedure No. 2 which is utilized to regulate the
28 receipt and distribution of quarterly and annual inmate

9

packages.  Both clearly state that inmates must agree to the donation or destruction of unacceptable package items before they will receive packages.  Exhibit 5, subsequently amended in a filing by the Attorney General on June 24, 1992, is a declaration from a correctional officer in inmate property receiving and release.  It states that the "no exceptions" agreement is a guideline that inmates must adhere to in order to enjoy the privilege of receiving a quarterly package.  See paragraphs 2 and 3 of amended declaration of P. Mortimore, filed by the Attorney General on June 24, 1992.

> 2.    The Provisions of Title 15, California Code of
>        Regulations, section 3147 (a) Prevent Folsom
>        Prison Officials from Compelling Inmates to
>        Consent to the Destruction or Donation of
>        Undeliverable Package Items.

The Attorney General contends that Operations Procedure No. 2 enables Folsom Prison officials to require inmates to execute the "no exceptions" agreement as a precondition to receiving quarterly package items.  Its contested provisions state that inmates must agree to the donation or destruction of undeliverable package items before they will receive allowable quarterly package items.  See Exhibit 8, attached to the Attorney General's Return.

There is one insurmountable difficulty with the Attorney General's contention.  It is contradicted by the provisions of Title 15, California Code of Regulations, section 3147(a)(6) (A-D):

> Disposition of Undelivered Mail.  Incoming mail
> disallowed under the provisions of this article or
> under approved facility procedures or disallowed
> pursuant to an appeal will be disposed of in the
> following manner:

10

1

(A)   Returned to sender.

(B)   Mailed at the inmate's or facility's expense as provided in section 3134 to an outside correspondent designated by the inmate.

(C)   Placed in the inmate's unissued personal property.

(D)   With the inmate's written consent, destroyed or donated to a charitable organization outside the facility.

Title 15, California Code of Regulations, section 3147 (a)(6)(D) only permits the donation or destruction of undelivered mail items with the inmate's written consent.  By contrast, Operations Procedure No. 2 explicitly enables prison employees to donate or destroy unacceptable inmate package items without inmate consent.  Operations Procedure No. 2 also explicity prevents inmates from returning unacceptable package items to the sender in direct violation of section 3147(a)(6)(B).

California prisoners are granted rights by regulations, and have a due process right to the enforcement of them.  In re Head (1986) 42 Cal.3d 223, 229.  Title 15, California Code of Regulations, section 3147(a)(6)(A-D) grants inmates the right to prevent the donation or destruction of undeliverable package items without their consent.  The enforcement of Operations Procedure No. 2 against petitioner and current Folsom Prison inmates therefore constitutes a violation of their constitutional due process rights.

Furthermore, the enforcement of the contested provisions of Operations Procedure No. 2 may be selective within the Department of Corrections.  If so, such a selective application

11

is probably a violation of the constitutional equal protection rights of inmates as well.

3. There Is No Other Regulatory Basis for the Implementation of the Contested Provisions of Operational Procedure No. 2.

The Attorney General recognizes that there must be a regulatory or statutory basis for the implementation of local institutional rules or operating procedures. See pages 14 through 17 of the Attorney General's Return. He contends that Operations Procedure No. 2 is authorized by the provisions of Title 15, California Code of Regulations, section 3190. The Court finds this contention unpersuasive.

The pertinent portion of Title 15, California Code of Regulations, section 3190 states:

"Wardens and superintendents shall establish a list of personal property items and the maximum amount of such items an inmate may have in his or her possession. Institutions shall permit inmates to possess in their living quarters, in addition to state property items issued to an inmate, personal property that present no threat to institution security or the safety of persons."

Petitioner correctly asserts that section 3190 only enpowers prison wardens and superintendents to determine the types and amounts of acceptable inmate property. It is completely silent as to the manner in which unacceptable items of inmate property should be handled. The Court accordingly finds that the provisions of section 3190 do not provide a regulatory basis for the enactment of Operations Procedure No. 2.

Even if the Court accepted the Attorney General's contention, it would still find Operations Procedure No. 2 invalid. It is universally accepted that more specific

12

1   statutory or regulatory provisions are normally given effect

2   over more general ones.  Vol. 58, CAL JUR, 3d edition,

3   "Statutes", section 130.  In this instance, the provisions of

4   Title 15, California Code of Regulations, section 3147 (a)(6)(A-

5   D) are clearly more specific than those of Title 15, California

6   Code of Regulations, section 3190.

7       Finally, there is one other argument which must be

8   addressed in this subsection.  Petitioner's final, Director's

9   Level, administrative appeal decision states that Title 15,

10   California Code of Regulations, section 3147(a)(9)(G) provides a

11   basis for the contested policy contained in Operations Procedure

12   No. 2.  The Court rules that such a decision is erroneous.

13       Title 15, California Code of Regulations, section

14   3147(a)(9)(G) states:

15        "... Packages.  Facilities will establish and
     make available to all inmates procedures for the

16     receipt of packages by inmates from correspondents in
     accordance with limits set for the assigned inmate

17     work/incentive group.  Such procedures may require an
     inmate to obtain prior approval to receive a package.

18     Facilities may refuse to accept packages addressed to
     an inmate if prior approval has not been obtained, or

19     if a package is received at a facility, the facility
     may refuse to deliver the package and dispose of the

20     package as provided in subsection (a)(6) of this
     section...."

21       The language of the Director's Level decision implies that

22   the "no exceptions" agreement is a section 3147(a)(9)(G) prior

23   approval for the receipt of a package.  The Court does not

24   accept any such implication.  Prison officials cannot rely upon

25   the vague, general language of section 3147(a)(9)(G) to justify

26   an operations procedure which which is contrary to the specific

27   provisions of section 3147(a)(6)(A-D).

28

Most convincingly, section 3147(a)(9)(G) specifically addresses situations in which a facility receives a package without the inmate completing a required prior approval. It states that it may "dispose of the package as provided in subsection (a)(6) of this section."

4. The Contested Provisions of Operations Procedure No. 2 Are Illegal Because They Have Not Been Promulgated in Accordance with the Administrative Procedure Act.

Finally, petitioner maintains that the unauthorized prison regulations are illegal because they have not been implemented in accordance with the Administrative Procedure Act. Despite the Attorney General's protestations otherwise, he is correct. No statutory or regulatory authority exists for these internal prison regulations. They are, therefore, illegal. As already noted, there must be a regulatory basis for the implementation of local institutional rules or operating procedures. None exists in this case.

C. Petitioner Is Not Entitled to Monetary Damages for Unacceptable Items Seized from March 21, 1992 Quarterly Package.

Petitioner requests that he be compensated for unacceptable items seized from him March 21, 1992. He does not know if they were destroyed or donated to charity. The Court denies this request.

The Court cannot order the award of monetary damages to petitioner because requests for monetary damages do not constitute a basis for habeas corpus relief. Instead, such claims constitute tort claims which must be brought pursuant to Government Code sections 945.4 and 950.2. Petitioner cannot bring an action in Superior Court unless he has filed a timely

14

1  claim which has been rejected by the Board of Control.

2  Government Code sections 910, 911.2 and 946.6.

3  RE:meb
   k:\lrs\hc110971

4

5

6  DATED: 7/22/92

                        PETER MERING
7                       JUDGE OF THE SUPERIOR COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        15

PROOF OF SERVICE BY MAIL

(C.C.P. Sec. 101a #2015-5, U.S.C. Sec. 1746)

I, _COLVIN MECRIGHT_, am a resident of Pelican Bay State Prison, in the County of

Del Norte, State of California. I am over the age of eighteen (18) years and am a party to this action.

My State Prison address is: Pelican Bay State Prison, P.O. Box 7500, Housing Unit _A3_ Cell

Number _131_, Crescent City, CA 95532-7500.

On the _17_ day of _JUNE_, _2008_, I served the following (set forth the exact

title of document(s) served):

_NO. CV 08-0804-JW, ORDER TO SHOW CAUSE AND_

_TEMPORARY RESTRAINING ORDER_

On the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with

postage thereon fully paid, in the United States mail, in a receptacle so provided at Pelican Bay State

Prison, Crescent City, CA 95532, and addressed as follows:

_UNITED STATES DISTRICT COURT_
_NORTHERN DISTRICT OF_
_CALIFORNIA_
_450 GOLDEN GATE AVE._
_SAN FRANCISCO, CALIF_
_94102_

I declare under penalty of perjury that the foregoing is true and correct:

_Colin McCleght_                    _6/17/08_
Inmate Signature                         Date

DECLARATION OF COLVIN McCRIGHT
I, COLVIN McCRIGHT, HEREBY DECLARE:

1. I AM PRESENTLY INCARCERATED AT PELICAN BAY STATE PRISON. MY COMPLAINT, CASE NO. CV 08-0804-JW, WAS MAILED FROM THIS PRISON AND FILED IN THE NORTHERN DISTRICT COURT ON FEBRUARY. 5, 2008.

2. IN MAY 2008 A STATE APPOINTED ATTORNEY WAS ASSIGNED TO ASSIST ME AT MY SO-CALLED SUITABILITY HEARING ON JUNE 10, 2008.

3. THE ATTORNEY VISITED ME AT THE PRISON ON 5-21-08. AT THAT TIME I ADVISED HIM OF THE PENDING LITIGATION, AND ON 6-10-08 THE PAROLE BOARD INFORMED ME THAT THE JUNE 10TH HEARING WAS CANCELLED BECAUSE THERE ARE NO COMMISSIONERS AVAILABLE.

4. THE HEARING CANCELLATION IS UNUSUAL BECAUSE IT OCCURRED SHORTLY AFTER THE ATTORNEY CONSULTED THE BOARD ABOUT THE PENDING LITIGATION.

5. BECAUSE OF THE TIMING OF THE CANCELLATION I AM CERTAIN THE BOARD DOES NOT WANT TO HOLD THE HEARING IN ACCORDANCE WITH THE PROCEDURES CODIFIED IN CHAIRMANS DIRECTIVE 75/30 AND TERM HEARING RULES THAT WERE IN EFFECT WHEN I BECAME ELIGIBLE FOR PAROLE IN 1979. SEE ORIGINAL COMPLAINT, EXHIBIT E.

6. ON PREVIOUS OCCASIONS PRISON OFFICIALS HAVE USED INSTITUTIONAL CONVENIENCE AS AN EXCUSE TO TRANSFER ME TO ANOTHER PRISON AND CONFISCATE MY PERSONAL AND LEGAL PROPERTY. SEE ORDER TO SHOW CAUSE, EXHIBIT B, PAGE 4.

7. I AM CONFIDENT I WILL PREVAIL ON THE MERITS. THIS IS SO BECAUSE THE TERM HEARING PROCEDURE IS STARE DECISIS. SEE ORIGINAL COMPLAINT, EXHS A,B,C.

-I-

FOR INSTANCE, IN RESPONSE TO THE <u>IN RE RODRIGUEZ</u> TERM FIXING MANDATE THE ATTORNEY GENERAL'S, "ALL" BOARD MEMBERS, AND DIRECTOR OF CORRECTIONS MISLED THE STATE COURT IN THE CASE OF <u>IN RE WILLIAMS</u>, 125 CAL. REPT. 457, AND <u>IN RE STANLEY</u>, 126 CAL. RPTR. 524, BY CLAIMING THAT THE PROCEDURES FOR FIXING THE PRIMARY TERMS OF PRISONERS SERVING INDETERMINATE TERMS WERE ESTABLISHED IN CHAIRMAN'S DIRECTIVE 75/30, EFFECTIVE SEPTEMBER 1, 1975. SEE CIVIL COMPLAINT, EXHIBIT(S) A-B-C.

8.  SOME TIME BETWEEN 1976-80 THE ABOVE PARTIES AND GOVERNOR'S OFFICE ENTERED INTO A COLLUSIVE AGREEMENT TO SUBVERT CD 75/30 BY FALSELY REPRESENTING TO THE FEDERAL COURTS THAT ~~CLAIMING~~ THERE WERE NO REGULATIONS THAT REQUIRED THE GOVERNOR OR PAROLE BOARD TO FIX THE PRIMARY TERMS OF ISL PRISONERS BY A SPECIFIC DATE OR AT ALL. (A COPY OF THE DIRECTIVE IS ATTACHED TO THE CIVIL COMPLAINT AS EXHIBIT B. ON PAGE 9 IT CLEARLY SHOWS THAT THE BASE TERM FOR FIRST DEGREE MURDER WAS 96-156 MONTHS)

9.  THE CURRENT SUITABILITY PROCEDURES REQUIRED BY CAL. PENAL CODE, § 3041 WERE OFFICIALLY IMPLEMENTED AT MY 3-18-76 PAROLE HEARING, WHERE THE ADULT AUTHORITY (AA) FAILED TO FIX MY PRIMARY TERM FOR THE "LIFE" SENTENCE IN CASE #84340. SEE CIVIL COMPLAINT, EXHIBIT E.

10. I DO BELIEVE DEFENDANT'S EMPLOYEES HAVE BEGUN TO RETALIATE AGAINST ME BY (1) CANCELLING MY JUNE 10, 2008 PAROLE HEARING AND (2) REFUSING TO COPY MY LEGAL DOCUMENTS TO THE COURT. FOR INSTANCE, ON JUNE 16, 2008 I SENT THIS

- 2 -

DOCUMENT TO THE LAW LIBRARY TO BE COPIED.
THE LIBRARIAN REFUSED TO COPY IT BECAUSE
THE PAGES WERE NOT "SEQUENTIALLY NUMBERED."
SEE EXHIBIT A.

11. ALTHOUGH THE PAGES ARE NUMBERE 1-24 IN
THE UPPER LEFT HAND CORNER — I KNOW OF NO
RULES OF COURT THAT REQUIRE SEQUENTIAL
NUMBERING ONCE THE DOCUMENT HAS BEEN
PROPERLY NUMBERED — AS THIS ONE IS.

12. THE LIBRARIAN IS FURTHER RETALIATING AGAINST
ME BY REFUSING TO COPY ANY OF MY LEGAL
DOCUMENTS "PENDING THE OUTCOME" OF MY
CDC 602 APPEAL OF THE POLICY WHICH COULD
AND WILL TAKE ATLEAST 6-MONTHS. SEE EXH(S) A.

13. BECAUSE DEFENDANT'S HAVE MISLED THE FEDERAL
COURT'S WITH RESPECT TO THE TERM FIXING
PROCEDURES; REFUSE TO COPY MY LEGAL DOCUMENTS,
AND FLAT OUT REFUSE TO CONDUCT MY TERM
HEARING IN ACCORDANCE WITH THE PROCEDURES
REQUIRED BY CD 75/30 — IT IS NECESSARY
THAT A TEMPORARY RESTRAINING ORDER BE
GRANTED TO ENJOIN THE DESPERATE CONDUCT
OF DEFENDANTS AGENTS, EMPLOYEES OR
ASSOCIATES.

I, COLVIN McCRIGHT, UNDER PENALTY OF PERJURY,
THAT THE FACTS I HAVE STATED ARE TRUE AND
CORRECT TO THE BEST OF MY KNOWLEDGE.
I SO SWEAR, THIS 17TH DAY OF JUNE 2008.

Colvin McCright
COLVIN McCRIGHT

1 (PER SECTION 3084.1 (RIGHT TO APPEAL), ANY INMATE OR PAROLEE
UNDER CDC-JURISDICTION MAY APPEAL ANY DEPARTMENTAL
DECISION, ACTION OR CONDUCT OR POLICY PERCEIVED TO BE
ADVERSE UPON THEIR WELFARE. SECTION (d) STATES IN PART
THAT NO REPRISALS SHALL BE TAKEN AGAINST THE INMATE
OR PAROLEE FOR FILING AN APPEAL. REFUSING
TO COPY MY LEGAL DOCUMENTS PENDING AN
ADMINISTRATIVE APPEAL IS A [IN]NECESSARY
REPRISAL

EXHIBT(S)
A

# PELICAN BAY STATE PRISON
## A FAC. LAW LIBRARY
### REQUEST FOR LEGAL PHOTO COPY SERVICE

**RULES AND CONDITIONS:**
1. WHEN REQUESTING PHOTOCOPY SERVICES, YOU MUST COMPLETELY FILL OUT AND SUBMIT:
   - A.) REQUEST FOR PHOTOCOPY SERVICE FORM.
   - B.) SIGNED TRUST WITHDRAWAL FORM.
2. PHOTOCOPY SERVICE IS LIMITED TO LEGAL DOCUMENTS AS PER D.O.M. §14010.21.LAW BOOKS,REFERENCE MANUALS, TRANSCRIPTS, PERSONAL MAIL, ETC. WILL NOT BE COPIED.
3. COST FOR PHOTOCOPY SERVICES WILL BE TEN CENTS (10¢) PER PAGE.
4. NO INMATE MAY SUBMIT ANOTHER INMATE'S DOCUMENTS FOR COPY.
5. SEPARATE ALL DOUBLE SIDED AND ODD SIZED PAGES FROM THE REST OF YOUR DOCUMENTS TO ASSIST STAFF IN MORE EFFICIENT HANDLING OF YOUR REQUESTS. DO NOT TIE OR TAPE PAGE TOGETHER.
6. PHOTOCOPY SERVICE IS SUBJECT TO THESE RULES AND CONDITIONS TO PREVENT ABUSE AND TO ASSURE THAT ALL INMATES HAVE THE OPPORTUNITY TO BENEFIT FROM THE SERVICE.

I HAVE READ THE RULES AND CONDITIONS ABOVE. I AGREE TO ACCEPT AND COMPLY WITH THEM.

NAME (PRINT): Colvin MECRIGHT   C.D.C. #: B-08892   CELL #: A3-131
TYPE OF DOCUMENT: LEGAL   NUMBER OF PAGES: 24
NAME OF COURT: NORTHERN DIST OF CALIF   NUMBER OF COPIES: 3
PLAINTIFF: Colvin McCright   TOTAL COPIES: 72
DEFENDANT: Gov. Arnold Schwarzenegger   TOTAL COST: $7.20
INMATES SIGNATURE: Colvin McCreght   DATE: 6-12-08

**\*\*\* STAFF ONLY \*\*\***   JUN 13 REC'D
A YARD LAW LIBRARY

DATE RECEIVED IN LIBRARY:_____
APPROVED:_____ DENIED:_____ REASON FOR DENIAL:_____
COMPLETED BY:_____   DATE:_____
UNIT STAFF SIGNATURE:_____   DATE:_____
RECEIVED & APPROVED:_____ (inmate Signature)   DATE:_____
IN LIB:_____ PAGED:_____
FLOOR OFFICER: HAVE INMATE SIGN. THEN RETURN TO LAW LIBRARY.
**\*\*\*THANKS!\*\*\***

# PELICAN BAY STATE PRISON
## A FAC. LAW LIBRARY
### REQUEST FOR LEGAL PHOTO COPY SERVICE

RULES AND CONDITIONS:

1. WHEN REQUESTING PHOTOCOPY SERVICES, YOU MUST COMPLETELY FILL OUT AND SUBMIT:
   - A.) REQUEST FOR PHOTOCOPY SERVICE FORM.
   - B.) SIGNED TRUST WITHDRAWAL FORM.
2. PHOTOCOPY SERVICE IS LIMITED TO LEGAL DOCUMENTS AS PER D.O.M. §14010.21.LAW BOOKS,REFERENCE MANUALS, TRANSCRIPTS, PERSONAL MAIL, ETC. WILL NOT BE COPIED.
3. COST FOR PHOTOCOPY SERVICES WILL BE TEN CENTS (10¢) PER PAGE.
4. NO INMATE MAY SUBMIT ANOTHER INMATE'S DOCUMENTS FOR COPY.
5. SEPARATE ALL DOUBLE SIDED AND ODD SIZED PAGES FROM THE REST OF YOUR DOCUMENTS TO ASSIST STAFF IN MORE EFFICIENT HANDLING OF YOUR REQUESTS. DO NOT TIE OR TAPE PAGE TOGETHER.
6. PHOTOCOPY SERVICE IS SUBJECT TO THESE RULES AND CONDITIONS TO PREVENT ABUSE AND TO ASSURE THAT ALL INMATES HAVE THE OPPORTUNITY TO BENEFIT FROM THE SERVICE.

I HAVE READ THE RULES AND CONDITIONS ABOVE. I AGREE TO ACCEPT AND COMPLY WITH THEM.

NAME (PRINT): Colvin McCright     C.D.C. #: B-08842     CELL #: A3-131

TYPE OF DOCUMENT: LEGAL     NUMBER OF PAGES: 24

NAME OF COURT: NORTHERN DISTRICT     NUMBER OF COPIES: 3

PLAINTIFF: Colvin McCright     TOTAL COPIES: 72

DEFENDANT: WARDEN ROBER HOREL, ETAL     TOTAL COST: $7.20

INMATES SIGNATURE: Colin McCright     DATE: 6-16-08

\*\*\* STAFF ONLY \*\*\*     JUN 17 REC'D
A YARD LAW LIBRARY !

DATE RECEIVED IN LIBRARY: _____

APPROVED: _____ DENIED 6/7/08 REASON FOR DENIAL: Denied

pending outcome of CDC 602.     DATE: _____

COMPLETED BY: _____     DATE: _____

UNIT STAFF SIGNATURE: _____     DATE: _____

RECEIVED & APPROVED: _____     DATE: _____
(Inmate Signature)

IN LIB: _____ PAGED: _____

FLOOR OFFICER: HAVE INMATE SIGN. THEN RETURN TO LAW LIBRARY.
\*\*\*THANKS!\*\*\*

## PROOF OF SERVICE BY MAIL

### (C.C.P. Sec. 101a #2015-5, U.S.C. Sec. 1746)

I, COLVIN MCCRIGHT , am a resident of Pelican Bay State Prison, in the County of

Del Norte, State of California. I am over the age of eighteen (18) years and am a party to this action.

My State Prison address is: Pelican Bay State Prison, P.O. Box 7500, Housing Unit A-3 Cell

Number 131, Crescent City, CA 95532-7500.

On the 17 day of JUNE , 2008 , I served the following (set forth the exact

title of document(s) served):

DECLARATION OF COLVIN MCCRIGHT
(CV-08-0804-JW)

On the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with

postage thereon fully paid, in the United States mail, in a receptacle so provided at Pelican Bay State

Prison, Crescent City, CA 95532, and addressed as follows:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA
450 GOLDEN GATE AVE
SAN FRANCISCO, CALIF
94102

I declare under penalty of perjury that the foregoing is true and correct:

Colin McCreght          6/17/08
Inmate Signature          Date